[L. A. No. 29591.   In Bank.   Jan. 20, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; HARVEY KEITH SMITH, Real Party in Interest.

Evelle J. Younger, District Attorney, Harry Wood, Harry B. Sondheim and Robert J. Lord, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Joseph A. Ball and Douglas Dalton for Real Party in Interest.

SULLIVAN, J.—Petitioner, the People of the State of California acting through its attorney, Evelle J. Younger, District Attorney of the County of Los Angeles, by petition filed pursuant to Penal Code section 1538.5[1] seeks a writ of mandate commanding respondent court to annul its order of April 15, 1968, suppressing evidence in a criminal action [2] against defendant Harvey Keith Smith, real party in interest herein. We issued an alternative writ of mandate. Real party in interest, defendant below, has made a return thereto by demurrer (Cal. Rules of Court, rule 56(c)) asserting in substance that the petition for writ of mandate does not state facts sufficient to entitle the petitioner to the relief requested.

On December 28, 1967, Smith was charged by indictment with five counts of bribery of public officers and employees (§ 67½) and five counts of perjury committed before a grand jury (§ 118). Pursuant to section 1538.5 he moved to suppress certain evidence on the ground that it was obtained in violation of, and was therefore inadmissible under, former section 653j.

---

[1] Hereafter, unless otherwise indicated, all section references are to the Penal Code.

[2] The criminal action is entitled People v. Harvey Keith Smith, Los Angeles Superior Court No. A-228399.

The pertinent facts giving rise to the motion to suppress are as follows. In September 1965, Smith employed one Edward N. Bynon, a private detective, to install a recording system which was voice activated and which tape recorded all conversations, including telephone conversations, in all of defendant's offices. Smith hoped that this system would expose the source of substantial annual losses to his companies caused by an internal "leak."

Having purchased the equipment authorized by Smith and having obtained Smith's approval of the details of placement of all the various hidden microphones and other components in Smith's offices, Bynon installed a voice-activated tape recorder and commenced testing of it on the afternoon of November 10, 1965. Before leaving Smith's office that day, Bynon placed the voice-activated recording system on its automatic mode[3] so that any voice or other noise in the conference room would cause the unit to record. The object of this test was to examine performance of the recorder under sustained operation.

Later that evening Smith held a meeting in his conference room with several individuals who were later summoned as witnesses before the grand jury. What was said at the meeting was automatically recorded by the system which Bynon had earlier that day left in operation for testing purposes.

On the next day, November 11, Bynon returned to Smith's offices, discovered for the first time that the automatic recorder had taped something, and began testing the manually operated recording equipment. While testing a manual tape recorder in one of the offices, Bynon taped portions of another conversation which was then taking place in Smith's personal office between Smith and another person who was also later summoned as a witness before the grand jury. The portions thus tape recorded were somewhat disconnected since Bynon found it necessary to keep turning the recorder on and off while running it through the various testing and adjusting procedures. On this occasion, Bynon knew that persons were in Smith's office during the testing; however, there is no evidence that at the time he was conducting the test Bynon knew who the persons were or what they were discussing.

It is undisputed that the above tape recordings were made without any request or direction of any law enforcement agency or officer. Some months later, however, Bynon de-

---

[3]The system could also be activated manually by placing the proper switch on the manual mode.

livered to law enforcement officers a copy of the tape. This was subsequently used by representatives of the district attorney to refresh the memories of those persons taking part in the conversation, who were later called before the grand jury and testified as to such conversation had with Smith. At the hearing on the motion to suppress, it was stipulated that without having their memories refreshed by the tape, none of the witnesses would have any independent recollection of the tape recorded conversation.[4]

The trial court ordered 1) that the copy of the tape which recorded the conversations had in Smith's office on both November 10 and November 11, be suppressed as evidence; and 2) that the testimony of the various witnesses who appeared before the grand jury and whose memories were refreshed by the tape, insofar as said testimony related to the conversations, be suppressed as evidence and stricken from the record. The declared basis of the court's order was that each of the conversations was a confidential communication within the meaning of former section 653j and was recorded on tape by Bynon without the consent of any party to the conversation in violation of said section. These conclusions rested upon the court's finding "the absence of consent solely as a matter of law" since there was no showing that Smith or any other party specifically consented to the recording and the further finding that Smith did not "give a blanket consent to Mr. Bynon to record everything and anything he could catch in any of those rooms at any time of day or night." Additionally the court found "that Smith did authorize and direct the installation of the recording system used, and that the recordings *were made by chance,* during testing normally incident to the installation, but that such authorization to install and test is not, as a matter of law, sufficient to amount to consent to making the recordings here involved." (Italics added.)

At the outset we face a procedural question. Although both the People and defendant apparently have assumed that section 1538.5 provides a proper avenue toward the exclusion of the evidence here in controversy, we must

---

[4]It would appear from the record now before us that without the testimony of these witnesses the People will be unable to make a *prima facie* case on the perjury counts since the People's theory on these counts is that Smith, while under oath before the grand jury, knowingly and falsely denied that he engaged in the conversations which were tape recorded. At the same time, it would appear that suppression of the tape and the testimony will significantly impair the prosecution of Smith on the bribery counts since the tapes constitute damaging evidence in support of such counts.

decide whether or not the section is available to effect suppression where, as here, the evidence has *not* been obtained as the result of a search or seizure by a government agent. We have concluded that in the light of its plain language and legislative history the section is not applicable.

Section 1538.5, which we set out in pertinent part in the margin,[5] provides that a defendant may move to suppress as evidence any tangible or intangible thing *obtained as a result of search or seizure* either with or without a warrant on the ground that the *search or seizure* was *unreasonable.* ▮ Unquestionably the section by providing for the motion only where there has been a search or seizure, is directed only toward those searches and seizures which are conducted by government agents and which can be considered unreasonable under constitutional or other enumerated standards. Clearly subdivision (2) is inapplicable where the property was not obtained by a government agent because section 1523 requires a warrant to be "directed to a peace-officer, commanding him to search . . . ." and section 1530 precludes service of a search warrant by anyone not mentioned in its directions "except in aid of the officer on his requiring it, he being present and acting in its execution."

As to both subdivisions (1) and (2) recent United States Supreme Court cases hold that unless the state standard for reasonableness of a search is higher than the federal standard, the standard or test of reasonableness is that required by the Fourth Amendment of the United States Constitution. (*See, e. g., Cooper* v. *California* (1967) 386 U.S. 58, 61-62 [17 L.Ed. 2d 730, 733-734, 87 S.Ct. 788].) Settled principles of constitutional law make the Fourth Amemdment applicable to the states through the Fourteenth Amendment which prohibits a state from depriving "any person of life, liberty, or property, without due process of law." ▮ The conduct of a person not acting under the authority of a state is not proscribed by the Fourth or Fourteenth Amendments of the federal Con-

---

[5]Section 1538.5 in pertinent part provides: "A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing *obtained as a result of a search or seizure* on the ground that:

"(1) *The search or seizure* without a warrant was unreasonable; or

"(2) *The search or seizure* with a warrant was unreasonable because (i) the warrant is insufficient on its face; (ii) the property or evidence obtained is not that described in the warrant; (iii) there was not probable cause for the issuance of the warrant; (iv) the method of execution of the warrant *violated federal or state constitutional standards;* or (v) there was any other violation of federal or state constitutional standards." (Italics added.)

stitution. ▆ There are no state standards for "search and seizure" by a private citizen who is not acting as an agent of the state or other governmental unit. ▆ Therefore, acquisition of property by a private citizen from another person cannot be deemed reasonable or unreasonable (*People v. Randazzo* (1963) 220 Cal.App.2d 768, 775-776 [34 Cal.Rptr. 65], cert. den. 377 U.S. 1000 [12 L.Ed.2d 1050, 84 S.Ct. 1933]; *People v. Johnson* (1957) 153 Cal.App.2d 870, 873-878 [315 P.2d 468]), and a motion to suppress evidence so obtained cannot be made on the ground that its acquisition constitutes an unreasonable search and seizure under section 1538.5.

Furthermore, it is clear from the available legislative history that section 1538.5 was intended to apply to suppression of evidence obtained by government agents. The original drafts of Senate Bill No. 88 which became section 1538.5 provided that:

"(a) A defendant *aggrieved by a search or seizure conducted by a governmental agent* may move for the return of property or to suppress as evidence anything so obtained on the ground that:

"(1) The search or seizure without a warrant was unreasonable; or

"(2) The search or seizure with a warrant was unreasonable because . . . [substantially the same as in the enacted bill]." (March 13, 1967.) (Italics added.)

The Legislative Counsel's Digest stated that the bill "[p]rovides exclusive procedure by which criminal defendant may test validity of search or seizure." This language was retained throughout all subsequent drafts except that in the last two drafts the word "procedure" was changed to "remedies."

The language of the statute itself was retained through the subsequent four drafts of the bill, but in the final two drafts was changed to that of the bill as enacted (see Senate Bill 88, drafts of July 21, 1967 and July 26, 1967). Absent any other indication of legislative intent, failure to change the analysis of the bill along with a change in the terms indicates to us that the legislators intended not a substantive alteration, but an editorial condensation.

▆ Accordingly, we conclude that the procedures afforded by section 1538.5 are not available where, as in the instant case, the evidence sought to be suppressed has not been "obtained as a result of a search or seizure." (§ 1538.5;

see fn. 5, *ante*.) In such circumstances, Smith was not entitled to invoke the section by moving to suppress evidence and the trial court abused its discretion by ordering suppression and granting relief in a situation where the section was not applicable. The People properly seek mandate to review the trial court's action in granting Smith's motion (§ 1538.5, subd. (o); see fn. 5, *ante*). In view of our above conclusions that the section was not applicable and that there was no basis on which suppression of evidence could be ordered pursuant to its provisions, we order issuance of a writ of mandate to annul the proceeding below.

█ Both parties urge that, if we arrive at this conclusion, we should not dispose of the matter on this procedural issue but should reach the question of the admissibility of the evidence on its merits. We must decline this invitation to ignore the plain provisions of the statute and to make it operative in a situation which the Legislature clearly did not contemplate.[6]

We, therefore, do not reach the merits and do not now decide the question of the admissibility of the evidence. This question we must leave to the determination of the court at trial. When the People indicate their desire to introduce the evidence involved, the defendant will then have an opportunity to make an appropriate motion or objection to exclude such evidence. The trial judge may in his discretion determine the question of admissibility and hear any evidence relevant thereto, in proceedings outside the presence of the jury either before the commencement of the trial proceedings or in the course of the same. This will be conducive to a fair disposition of the matter since it will afford the parties an opportunity to present additional evidence should they feel it necessary to do so in view of the observations we make hereafter. If the parties should not desire to present additional evidence, our holding herein should not in any way be deemed to preclude them, upon an appropriate stipulation and subject to the court's approval, from submitting the question of admissibility of evidence on the record heretofore made.

However, for the guidance of the trial court we make the following observations on the question of the admissibility of evidence involved. Simply stated the issue is this: Were the tape recordings obtained in violation of former section 653j

---

[6]Section 1538.5 was added by Stats. 1967, ch. 1537, § 1, in effect November 7, 1967.

which we have set forth in pertinent part in the margin?[7] If, in obtaining the recordings, Bynon committed the offense proscribed by subdivision (a) of that section, then clearly, with exceptions not here applicable, by virtue of subdivision (d) none of the evidence obtained by him ''shall be admissible in any judicial, administrative, legislative or other proceeding.''

To establish the offense proscribed by subdivision (a) of former section 653j it must be shown that (1) a person as defined in subdivision (b) not a party to the communication (2) intentionally and (3) without the consent of any party to the communication (4) eavesdropped upon or recorded (5) a confidential communication as defined in subdivision (c). On the record now before us, the parties appear to agree and the trial court found, that each of the two conversations occurring in Smith's office on November 10 and 11, 1965, constituted a confidential communication and that each was recorded on tape by Bynon. It is also undisputed that Bynon was not a party to either communication and seems to be assumed that he is a person falling within the definition of subdivision (b). The only elements of the five enumerated above which now

[7]Former section 653j was added to the code by Stats. 1963, ch. 1886, section 1 and repealed by Stats. 1967 ch. 1509, section 9. Its subject matter is now covered by section 632. Former section 653j provided in pertinent part as follows:

'' (a) Every person or his authorized agent not a party to the communication who, intentionally and without the consent of any party to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records a confidential communication, whether such communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000), or by both such fine and imprisonment.

'' (b) The term 'person' includes an individual, business association, partnership, corporation, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording such communication or an individual acting under the direction of a party to the confidential communication.

'' (c) The term 'confidential communication' includes any communication carried on in such circumstances as may reasonably indicate that the parties to such communication desire it to be confined to such parties, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

'' (d) Except as proof in a suit or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative. legislative or other proceeding.''

132

seem to be in controversy are No. 2 and No. 3. On the present record at least, the question which remains for the trial court's determination is this: Did Bynon *intentionally* and *without the consent* of any party thereto record the confidential communications.[8]

Defendant contends that the word ''intentionally'' as used in subdivision (a) (see fn. 7, *ante*) goes only to the act of putting the recording equipment in operation. In other words, he argues, a mere intention to start the equipment without more satisfies the requirement of intent and makes the person involved in the act criminally liable. This reading of the statute seems to us to slight if not ignore the prevailing trend ''away from the imposition of criminal sanctions in the absence of culpability where the governing statute, by implication or otherwise, expresses no legislative intent or policy to be served by imposing strict liability.'' (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 533 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]; compare *People* v. *Gory* (1946) 28 Cal.2d 450, 453-454 [170 P.2d 433].) Eavesdropping is not one of that class of crimes that affects public health, welfare or safety for which strict liability is most often imposed without any ingredient of intent (see *Morissette* v. *United States* (1952) 342 U.S. 246, 253-254 [96 L.Ed. 288, 295-296, 72 S.Ct. 240]; *People* v. *Vogel* (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850]), and there is no other indication that the Legislature intended to impose criminal sanctions in the absence of criminal intent.

Furthermore, the interpretation of the word ''intentionally'' advanced by defendant would produce results at once unreasonable and inconsistent with legislative purpose. ''The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.'' (*Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672], and cases there cited; *East Bay Garbage Co.* v. *Washington Township Sanitation Co.* (1959) 52 Cal.2d 708, 713 [344 P.2d 289].) Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose. (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 620 [7 Cal.Rptr.

---

[8]The People contend that Bynon ''did not violate subdivision (a) because two essential elements to this crime were absent, namely: (1) he did not intentionally record a confidential communication, and (2) he did not act without consent because Smith's acts in ordering the installation amounted, by law, to consent or authorization, at least to the extent of relieving the person who made the recordings from criminal liability for so doing.''

129, 354 P.2d 657] ; *County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17].) ■ In the interpretation of particular words, phrases or clauses in a statute, the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision containing such words, phrases or clauses. (*Wallace* v. *Payne* (1925) 197 Cal. 539, 544 [241 P. 879].) Words used in a statute "must be construed in context, keeping in mind the nature and obvious purpose of the statute. . . ." (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].)

In the light of these principles we think the word "intentionally" must be read in relation to the entire substance of the statute. Thus examined, there is no basis for the fragmentation of the statute attempted by defendant. Fairly read, the statute does not isolate the actor's intent from the object to which it is directed, namely the confidential communication; the two are inextricably bound together. Thus the statute imposes criminal liability on a person "who intentionally and without the consent of a party to *a confidential communication* . . . eavesdrops upon or records *a confidential communication.* . . ." (Former § 653j, subd. (a).) ■ In short, it is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication. For example, a person might intend to record the calls of wild birds on a game reserve and at the same time accidentally pick up the confidential discussions of two poachers. To hold the birdwatcher punishable under the statute for such a fortuitous recording would be absurd. We reject Smith's contention that the mere intent to activitate a tape recorder which subsequently "by chance" records a confidential communication is sufficient to constitute an offense under the section. We conclude that a necessary element of the offense proscribed by former section 653j is *an intent to record a confidential communication.*

■ As we have already stated, the trial court found that each of the conversations in Smith's office was a confidential communication within the meaning of the statute and that each had been recorded on tape without the consent of any party to the conversation. However, on the issue of Bynon's state of mind, the only pertinent finding is that "the recordings were made *by chance,* during testing normally incident to the installation. . . ." (Italics added.) We think this finding is too vague, as the element of *chance* may have reference

either to the circumstances bringing Smith and his conferees within the range of the microphones or to Bynon's intentions in activating the recording equipment. The trial court must more specifically determine whether Bynon "intentionally" recorded a confidential communication.

As the definition of a degree of culpability, the word "intentional" has been the subject of widely differing interpretations, depending on context and apparent legislative intent. (See 46 C.J.S. Intentional, Intentionally, 1106-1107; *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 473 [267 P.2d 777]; *People* v. *McCree* (1954) 128 Cal.App.2d 196, 202 [275 P.2d 95].) For purposes of former section 653j, the recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation. (See Williams, Criminal Law: The General Part (2d ed. 1961), 34-42; *Coffman* v. *Godsoe* (1960) 142 Colo. 575, 588 [351 P.2d 808]. Compare Model Penal Code, § 2.02 (Proposed Official Draft) 25-28.) Such a reading of the statute provides effective protection against "eavesdroppers" without penalizing the innocent use of recording equipment. Whether in any instance a person possessed the requisite intent is "a question of fact which may be proved like any other fact, by acts, conduct and circumstances connected with the offense." (*People* v. *Fewkes* (1931) 214 Cal. 142, 148 [4 P.2d 538]; see § 21; *People* v. *Richardson* (1911) 161 Cal. 552, 558-559 [120 P. 20].)

We make one further observation. Under subdivision (b) the term "person" as used in former section 653j does not include "an individual acting under the direction of a party to the confidential communication." In deciding the question of admissibility when it arises in due course at trial, the respondent court may have to determine whether Bynon acted under the "direction" of Smith in recording the confidential conversations. "Direction" is defined as "guidance or supervision of action, conduct or operation" or "an explicit command." (Webster's New Internat. Dict. (3d ed. 1961).) It would seem that the Legislature sought to exclude from criminal liability one who recorded a confidential communication at the explicit command of one of the parties. The logic is clear; in terms of its effect on confidentiality, there is little distinction between recordation of a conversation by one of the parties personally, or by a third person acting at his com-

mand. In order to come within the exclusion, however, the person recording a conversation must do so in response to a specific command to record the particular conversation. In other words, it must be within the knowledge of the "directing" party that the conversation is being recorded, and he must have intended to record the particular conversation. If at trial the court determines that Bynon in making the recordings was "acting under the direction" of Smith, then clearly it would follow that Bynon's conduct was not violative of the statute and that the evidence in question would not be inadmissible under subdivision (d).

Let a peremptory writ of mandate issue commanding respondent superior court to annul and set aside its order of April 15, 1968, and to enter a new order denying the real party in interest's motion to suppress the evidence pursuant to section 1538.5.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

The petition of the real party in interest for a rehearing and the petitioner's application for modification of the opinion were denied February 19, 1969.