[S.F. No. 23660. Feb. 6, 1978.]

Estate of NORA LEE KRAMME, Deceased.
ZOE ANNE McNEIL, as Administratrix, etc.,
Petitioner and Respondent, v.
CHARLES PAUL KRAMME, Claimant and Appellant.

---

**COUNSEL**

Mintz, Giller, Himmelman & Mintz, Richard S. Kessler and David A. Himmelman for Claimant and Appellant.

Russell Bruno for Petitioner and Respondent.

## OPINION

**BIRD, C. J.**—Charles Paul Kramme appeals from a probate court judgment disqualifying him from succeeding to any interest in his wife's estate. The probate court concluded that Charles had intentionally committed an unlawful act that resulted in his wife's death and, therefore, Probate Code section 258 precluded him from inheriting from her. Charles contends that Probate Code section 258 applies only to intentional killings. Since the court found that he did not intend to kill his wife, Charles argues he is entitled to succeed to his wife's estate. This court agrees.

I

The facts of the case are essentially undisputed. The Krammes had been having marital difficulties for some time. Charles suspected his wife, Nora, of having an affair with another man. Charles had spoken with him, warning him to stay away from the Kramme home. One evening, when Charles had reason to suspect his wife and her lover might come to the Kramme home together, Charles secreted himself in the house. After he saw his wife and her lover enter the house and heard his wife refer to her companion as "honey," he loaded a shotgun and surprised them. Pointing the loaded shotgun at the lover, Charles stated: "So there's nothing between you and my wife." The lover grabbed the gun, and a struggle ensued. As Nora approached them, the gun discharged, wounding her. Charles immediately rushed Nora to a hospital, but the wound proved fatal. Charles subsequently entered a negotiated plea of nolo contendere (Pen. Code, § 1016, subd. 3) to involuntary manslaughter (Pen. Code, § 192, subd. 2).

Nora left no will. As administratrix of Nora's estate, respondent instituted an heirship proceeding in the Superior Court of Contra Costa County to determine whether Charles was entitled to succeed to any part of his wife's estate. After a two-day hearing without a jury, the court found there was no evidence Charles had intended to shoot his wife.[1] The court, however, concluded that because he had intentionally brought

---

[1] Both Charles and the lover testified at the hearing, as well as a psychiatrist who had examined Charles for the district attorney's office on the day of Nora's death. The psychiatrist testified that the degree of remorse shown by Charles was, in his opinion, inconsistent with an intentional killing. Charles testified that he brandished the weapon to demonstrate to the lover, who was considerably larger than Charles, that he was serious in instructing him to stay away from his wife and home.

about an armed confrontation resulting in Nora's death, Charles was precluded under Probate Code section 258 from inheriting any interest in her estate. This appeal followed.

## II

The right to intestate succession is created by statute. Hence, a person is entitled to succeed to an interest in the estate of a person who dies intestate only in accordance with the statutory scheme set forth in Probate Code section 200 et seq. (*Estate of Knutzen* (1948) 31 Cal.2d 573, 578 [191 P.2d 747]; *Estate of Simmons* (1966) 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97].) As a limited exception to the usual pattern of intestate succession, Probate Code section 258[2] was created to terminate the inheritance rights of a claimant who caused the death of the decedent under certain prescribed circumstances.

Probate Code section 258 terminates the inheritance rights of any person who "unlawfully and intentionally caused the death of a decedent" or "caused the death of a decedent in the perpetration [of] or attempt to perpetrate" various enumerated felonies.[3] That section may apply even though the claimant has not been convicted of, or even charged with, a criminal offense. (*Estate of McGowan* (1973) 35 Cal.App.3d 611, 617 [111 Cal.Rptr. 39].) Unless the second sentence of Probate Code section 258 applies, the probate court must independently determine whether the claimant's conduct falls within the statute. Accordingly, if there has been neither a conviction nor an acquittal of murder or voluntary manslaughter,[4] the task of the probate court is to

---

[2]Probate Code section 258 provides: "No person who has unlawfully and intentionally caused the death of a decedent, and no person who has caused the death of·a decedent in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, Penal Code, shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

[3]It was never alleged that Charles caused his wife's death in the course of one of the enumerated felonies.

[4]Charles' plea of nolo contendere was not, and could not have been, used against him in the subsequent civil suit. (Pen. Code, § 1016, subd. 3; Evid. Code, § 1300.) His plea does not, however, operate as an acquittal of the original charge of first degree murder for purposes of Probate Code section 258. (*Estate of McGowan, supra,* 35 Cal.App.3d at pp. 618-620.) In ascertaining Charles' intent and the nature of his conduct, the court required that any conclusion be established beyond a reasonable doubt. (*Id.,* at p. 619.) Neither party suggests the standard of proof should be otherwise.

determine whether the claimant unlawfully and intentionally caused the decedent's death.

The probate court found that while Charles did not intend to kill Nora, he intentionally committed an unlawful act—confronting the couple with a loaded gun—which resulted in her death. The court concluded that such conduct fell within the proscription of section 258 against succession by claimants who "unlawfully and intentionally caused the death of a decedent." However, Charles contends that this phrase encompasses only intentional killings. Given the court's finding that he did not intend to kill his wife, Charles concludes section 258 does not terminate his inheritance rights.　■　Thus, the principal question before this court is whether that section disqualifies only claimants who intended to bring about the decedent's death, or whether, as respondent contends, it also disqualifies claimants who, without intending to kill, intentionally engaged in unlawful conduct which resulted in death.

■　Since succession is purely a creature of statute, this court has been reluctant to apply a succession statute to situations not within the statute's plain meaning. "When the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Estate of Simmons, supra,* 64 Cal.2d at p. 221.) This principle is particularly important in interpreting section 258, because that section terminates an otherwise valid right to inherit. This court should not construe a statute to work a forfeiture in the absence of a clear indication by the Legislature that it so intended. (*County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 803 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555].) Unless such intent is clearly reflected in the language of the statute, a legislative intent to disinherit will not be implied. (*Estate of Kirby* (1912) 162 Cal. 91, 94 [121 P. 370].)

With these principles in mind, this court now examines the language of section 258. In part, that section terminates the inheritance rights of any person who "intentionally *caused the death* of a decedent." (Italics added.) While the word "intentionally" has been variously defined depending on the context and intent of the Legislature (see *People* v. *Superior Court (Smith)* (1969) 70 Cal.2d 123, 134 [74 Cal.Rptr. 294, 449 P.2d 230]), this section specifies that a particular result, rather than a particular act, must have been intended.[5] For a result to be caused

---

[5]In *People* v. *Superior Court (Smith), supra,* 70 Cal.2d at page 134, this court interpreted analogous statutory language in former Penal Code section 653j, subdivision (a), which

"intentionally," the actor must either desire the result or know, to a substantial certainty, that the result will occur. (See, e.g., Rest.2d Torts, § 8A; Williams, Criminal Law: The General Part (2d ed. 1961) pp. 33-44; La Fave & Scott, Criminal Law, p. 196; Model Pen. Code (Proposed Official Draft 1962) §§ 1.13(12), 2.02(2).) Accordingly, the language in question indicates a legislative intent to disinherit only those persons who intended to cause a decedent's death. Individuals who intentionally commit an act which unintentionally brings about a decedent's death are not covered.

This interpretation of section 258 is substantiated by additional language in the first sentence, which specifically excludes those persons from inheriting who caused death in the commission of various enumerated felonies. If the Legislature had meant by the section's initial language to disinherit those persons who, without intending to kill, caused death in the commission of any unlawful act, the enumeration of felonies would have been superfluous. A death occurring during the commission of one of the enumerated felonies would have been covered by the initial language. Since this court must give effect to every part of the statute (see, e.g., *Cal Pacific Collections, Inc.* v. *Powers* (1969) 70 Cal.2d 135, 139 [74 Cal.Rptr. 289, 449 P.2d 225]), the addition of the language enumerating felonies establishes that the Legislature viewed the initial language as limited to *intentional* killings. Probate Code section 258 was intended to disqualify a person who committed an unintended killing only if the killing had occurred during the commission of one of the enumerated felonies.

This court's conclusion that the phrase "intentionally caused the death" is limited to intended killings is further substantiated by the wording of the section's second sentence. The second sentence provides that a conviction or acquittal on a charge of murder or voluntary manslaughter is conclusive as to the lawfulness or unlawfulness of the killing for purposes of that Probate Code section, but does not establish any presumption on the issue of intent. If all that is required to establish the element of intent is, as respondent contends, an intent to do an unlawful act that results in death, a conviction for either crime would be conclusive on that element as well. However, a specific intent to cause

---

made it a crime for anyone to "intentionally . . . [record] a confidential communication." This court held that "intentionally" in that statute required an intent to bring about the proscribed result rather than an intent merely to do an act which unintentionally brought about that result. Thus, the court concluded that the Penal Code section required an intent *to record a confidential communication*, rather ·than simply an intent to turn on a recording apparatus which happened to record a confidential communication.

death is not necessarily an element of all of those crimes. (See Pen. Code, §§ 187, 192.) Since the Legislature did not establish a presumption on the issue of intent, it may be inferred that the Legislature intended the phrase "intentionally caused the death" to encompass only intended killings, and not, as respondent urges, intentional acts that result in unintended deaths.

■ Based on the language of the entire statute and the principles of statutory construction set forth above, this court concludes that to have "intentionally caused the death of a decedent," a person must have intended that result. In this case the probate court found that there was no evidence Charles intended to shoot, much less kill, his wife. Further, the record contains no evidence that Charles considered the risk his conduct might pose for his wife, or knew to a substantial certainty that his actions would result in her death. Therefore, Charles is not precluded by Probate Code section 258 from succeeding to his wife's estate.

## III

■ Notwithstanding the Legislature's intent to limit the scope of Probate Code section 258, respondent contends that section should be construed differently and in conjunction with Civil Code sections 2224 and 3517.[6] So construed, she argues, Probate Code section 258 requires only an intent to do an unlawful act that results in the decedent's death. Respondent contends this interpretation of Probate Code section 258 is necessary to avoid treating property subject to probate, governed by Probate Code section 258, differently than nonprobated property, covered by Civil Code sections 2224 and 3517.

If respondent's argument were accepted, a court would be required to hold that where a death resulted from any intentional and unlawful act, the actor had "intentionally caused the death" for purposes of Probate Code section 258. This construction would expand the language of section 258 to include all reckless and negligent killings where the person causing death intentionally committed an unlawful act. Thus, an individual would be precluded from inheriting from his or her spouse's

---

[6]Civil Code section 2224 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Civil Code section 3517 provides: "No one can take advantage of his own wrong."

Both statutes were enacted in 1872 and have not been amended.

estate if that individual's intentional speeding had resulted in an accident in which the spouse was killed. This court finds no support for respondent's interpretation of the language of section 258. Furthermore, the history of section 258 demonstrates that the Legislature intended that the inheritance rights of a claimant who has caused the death of the decedent be governed by that specific statute rather than general equitable principles.

In 1905 the Legislature enacted a specific statute terminating the inheritance rights of those convicted of murdering a decedent despite the presence of Civil Code sections 2224 and 3517. (Former Civ. Code, § 1409; Stats. 1905, ch. 449, § 7, p. 610.)[7] In *Estate of Kirby* (1912) 162 Cal. 91 [121 P. 370], this court narrowly construed section 1409 and permitted Michael Kirby to succeed to a portion of his brother's estate although Michael had been convicted of manslaughter in his brother's death. The court stated: "Whether this accords with natural right and justice is a question upon which we cannot enter. The right of inheritance in this state does not depend upon the ideas of court or counsel as to justice and natural right. The entire matter is in the control of the legislature and depends wholly upon the provisions of the statute, regardless of our notions of natural right and justice. [Citations.] The statute having made the distinction between murder and manslaughter, the courts cannot ignore it or create a definition of the word murder different from that declared in the statute and from that of the common law and ordinary usage." (*Id.,* at p. 94.) This court in *Kirby* declined to use general equitable principles to establish a broader exception to the pattern of intestate succession than that created by the Legislature.

Although this court narrowly construed former Civil Code section 1409 in *Kirby,* that section was recodified in substantially its original form as Probate Code section 258 when the law on decedents' estates was revised and consolidated in 1931 in the new Probate Code. (Stats. 1931, ch. 281, § 258, p. 599.) Following that recodification of the Probate Code, the Courts of Appeal adhered to the analysis set forth in *Kirby* and refused to construe section 258 in conjunction with Civil Code section 3517 to bar succession by those convicted of manslaughter. (*Estate of Daniels* (1953) 120 Cal.App.2d 284, 293 [260 P.2d 991]; see also *Estate of Lysholm* (1947) 79 Cal.App.2d 467 [179 P.2d 833].)

---

[7]Civil Code section 1409 provided: "No person who has been convicted of the murder of the decedent shall be entitled to succeed to any portion of his estate; but the portion thereof to which he would otherwise be entitled to succeed descends to the other persons entitled thereto under the provisions of this title."

In 1955, the Legislature amended Probate Code section 258 to terminate the inheritance rights of those persons convicted of either murder or voluntary manslaughter. (Stats. 1955, ch. 1110, § 1, p. 2108.) Despite the narrow construction given by the courts to section 258, the 1955 amendment did not expand the scope of that section to make it congruent with Civil Code sections 2224 and 3517. The amended provision retained the requirement of conviction as a prerequisite to disqualifying a claimant. In 1963, that section was amended to its present form.[8]

As shown by this historical development, section 258 and its predecessors have disinherited only those committing particular kinds of unlawful acts. This court and the Courts of Appeal have consistently construed these statutes narrowly, notwithstanding the equitable principles embodied in Civil Code sections 2224 and 3517.[9] This approach is consistent with the principle that if a specific statute is enacted covering a particular subject, the specific statute controls and takes priority over a general statute encompassing the same subject. (E.g., *County of Placer* v. *Aetna Cas. etc. Co.* (1958) 50 Cal.2d 182, 189 [323 P.2d 753].)

While there has been some expansion since 1905 in the kind of conduct that will result in loss of inheritance rights, this court does not find in the Legislature's most recent amendment to section 258 any intent to extend that statute to unintended killings, except when death occurred during the commission of one of the enumerated felonies.[10] Given the

[8]Until its revision in 1963, the section was limited to those who inherited by intestate succession. The 1963 amendment made this provision also applicable to any person who would inherit under a decedent's will.

[9]A federal court applying California law in *Davis* v. *Aetna Life Insurance Company* (9th Cir. 1960) 279 F.2d 304, reviewed the California cases involving heirs who killed the decedent and concluded "that the reviewing courts of the State of California have limited the application of Probate Code, § 258 to situations which come within the plain meaning of the language of the section, and that such meaning is not to be enlarged by the language contained in Civil Code, § 3517." (*Id.,* at p. 309.)

[10]In restricting the application of Probate Code section 258 to intentional killings, this court is in accord with the views of leading commentators who have considered the inheritance rights of those who cause the decedent's death. (See, e.g., Wade, *Acquisition of Property by Wilfully Killing Another—A Statutory Solution* (1936) 49 Harv.L.Rev. 715, 722; McGovern, *Homicide and Succession to Property* (1969) 68 Mich.L.Rev. 65, 92-94; 5 Scott on Trusts (3d ed. 1967) § 492.3, pp. 3504-3507; Uniform Prob. Code, § 2-803, com. at p. 369.) This court's interpretation is also consistent with current commentaries on California law. (See, e.g., 24 Cal.Jur.3d, Decedent's Estates, § 57; 7 Witkin, Summary of Cal. Law (8th ed. 1973) Wills and Probate, § 24, pp. 5545-5547.)

Two cases in other jurisdictions, *Legette* v. *Smith* (1955) 226 S.C. 403 [85 S.E.2d 576], and *In re Wolf* (1914) 88 Misc. 433 [150 N.Y.S. 738], are factually similar to the instant case, although the claimant in each case is arguably less entitled to inherit than Charles

facts of this case, the language of the statute and its history, this court rejects the expansion of Probate Code section 258 urged by respondent.[11]

## IV

Charles Kramme's right to succeed to any interest in his wife's estate is governed by Probate Code section 258. That section disqualifies only those persons who intended to cause a decedent's death or caused a decedent's death in the commission of one of the enumerated felonies. The probate court found that Charles did *not* intend to kill his wife. Therefore, the court erred in terminating Charles' interest in his wife's estate.

This court recognizes that Charles' attempt to settle a domestic quarrel with a loaded shotgun was reprehensible. Nevertheless, the Legislature, in enacting and amending Probate Code section 258, did not intend to preclude succession by one who unintentionally caused another's death, unless the death occurred in the course of one of the statute's enumerated felonies.

The judgment is reversed, and the cause remanded so that the probate court may enter judgment in this heirship proceeding consistent with this opinion.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

---

Kramme. In both cases, the husband, while attempting to shoot his wife's lover, unintentionally shot her as she intervened. Both courts, applying equitable principles, permitted the husband to succeed to his wife's estate.

[11]While this court declines in this case to construe Probate Code section 258 in conjunction with Civil Code sections 2224 and 3517, it should be noted that the courts of this state have used sections 2224 and 3517 outside the probate context only to prevent a person who *intentionally* killed from benefitting from that unlawful act. For example, persons convicted of murder were denied proceeds of life insurance policies on their victims in *Beck* v. *West Coast Life Ins. Co.* (1952) 38 Cal.2d 643 [241 P.2d 544, 26 A.L.R.2d 979] and *West Coast L. Ins. Co.* v. *Crawford* (1943) 58 Cal.App.2d 771 [138 P.2d 384], and a man convicted of voluntary manslaughter in the death of his wife was not permitted to succeed by right of survivorship to property the couple held in joint tenancy in *Abbey* v. *Lord* (1959) 168 Cal.App.2d 499 [336 P.2d 226]. On the other hand, in *Throop* v. *Western Indemnity Co.* (1920) 49 Cal.App. 322 [193 P. 263], a man who unintentionally caused his wife's death through negligent handling of a firearm was permitted to keep the proceeds of an insurance policy on her life. (But see *Prudential Ins. Co. of America* v. *Harrison* (S.D.Cal. 1952) 106 F.Supp. 419.)