Filed 1/16/18; pub. order 2/9/18 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DALIA ROJAS, | D071442 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00023795-CU-MC-NC) |
| HSBC CARD SERVICES INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Reversed and remanded with directions.

Law Offices of Deborah L. Raymond and Deborah L. Raymond for Plaintiff and Appellant.

Stroock & Stroock & Lavan, Julia B. Strickland and Shannon E. Dudic for Defendants and Respondents.

In the underlying operative complaint, plaintiff Dalia Rojas pleaded two causes of action against defendants HSBC Card Services Inc. and HSBC Technology & Services

(USA) Inc. (together HSBC) based on HSBC's alleged violations of Rojas's right to privacy under the California Invasion of Privacy Act (Privacy Act), Penal Code section 630 et seq.[1] More specifically, Rojas alleged that HSBC intentionally recorded certain of her confidential telephone conversations in violation of: section 632, subdivision (a) (§ 632(a)), which prohibits one party to a telephone call from intentionally recording a confidential communication without the knowledge or consent of the other party; and section 632.7, subdivision (a) (§ 632.7(a)), which prohibits the intentional recording of a communication using a cellular or cordless telephone.

Rojas appeals from a summary judgment in favor of HSBC. We agree with Rojas that, because HSBC did not meet its initial burden under Code of Civil Procedure section 437c, subdivision (p)(2), the trial court erred in granting HSBC's motion for summary judgment. Accordingly, we will reverse the judgment and remand with directions to enter an order denying HSBC's motion.

I.

FACTUAL AND PROCEDURAL BACKGROUND

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' " (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.) We consider all the evidence in the moving and opposing papers, except evidence to which objections were made and sustained, liberally construing and reasonably

---

[1] Unless otherwise indicated, further undesignated statutory references are to the Penal Code.

2

deducing inferences from Rojas's evidence, resolving any doubts in the evidence in Rojas's favor.  (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).)  For the most part, the relevant facts are not in dispute.

From at least March 23, 2009, through May 1, 2012, HSBC employed a full-time telephone call recording system.[2]  According to HSBC's counsel's argument (and thus, we recognize, not evidence (*Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433)), this system contained "equipment that was activated when an employee placed a telephone call."[3]

During this time period, HSBC recorded 317 of Rojas's telephone conversations from calls made to Rojas on an HSBC company telephone.  Rojas's daughter, who was employed by HSBC Card Services Inc., placed 316 of the calls, and Rojas's friend, who was also an HSBC employee, placed one of the calls.  In its "Electronic Monitoring and Device Use" written policy in effect at the time, HSBC authorized its employees to use company telephones for personal calls, expressly advising them in writing that their "personal calls may be recorded."  All 317 of the calls were Rojas's "private personal telephone conversations"; and HSBC acknowledges that none involved HSBC business.

---

[2]     At that time, HSBC also used a part-time telephone recording system, but it is not at issue in this appeal—except to the extent we can infer from its use that HSBC knew how to record some, but not all, calls.

[3]     HSBC explains that, during the relevant time period, it used telephone recording systems to record calls " 'to provide training and feedback [to employees], as well as ensure compliance and quality service to our customers.' "  Rojas does not question HSBC's explanation for or stated business purpose of these systems; nor do we.

3

Based on the foregoing facts, Rojas sued HSBC for alleged violations of the Privacy Act. Rojas's first amended complaint contains two causes of action against HSBC.[4] In the first, brought pursuant to section 632(a),[5] Rojas alleges that HSBC intentionally recorded her confidential telephone conversations without her knowledge or consent. In the second, brought pursuant to section 632.7(a),[6] Rojas alleges that HSBC intentionally recorded certain of the telephone conversations in which she was using a cordless or cellular telephone. In both causes of action, Rojas seeks statutory damages and injunctive relief.[7]

HSBC brought a motion for summary judgment or, in the alternative, summary adjudication of each cause of action. HSBC argued that both causes of action fail

---

[4] The first amended complaint contains additional plaintiffs, names additional defendants, and asserts additional causes of action. None of these parties or claims is at issue in this appeal.

[5] Section 632(a) precludes "[a] person" from "intentionally and without the consent of all parties to a confidential communication[] us[ing] a[] . . . recording device to . . . record the confidential communication . . . carried on . . . by means of a . . . telephone . . . ."

[6] Section 632.7(a) precludes "[a] person" from, "without the consent of all parties to a communication, intercept[ing] or receiv[ing] and intentionally record[ing] . . . a communication transmitted between . . . a cellular radio telephone and a landline telephone . . . [or] a cordless telephone and a landline telephone . . . ."

[7] Although sections 632(a) and 632.7(a) provide only for criminal penalties, section 637.2 provides the following civil remedies: Subdivision (a) allows for a civil penalty of $5,000 "per violation" for each violation of section 632(a) and 632.7(a), or three times the actual amount of damages, if any (§ 637.2, subd. (a)); and subdivision (b) allows for injunctive relief to "restrain any violation" of section 632(a) or section 632.7(a) (§ 637.2, subd. (b)).

4

because, as a matter of law, HSBC did not *intentionally* record any of Rojas's telephone calls.[8]  According to HSBC, even though it acknowledged recording the 317 telephone conversations, because HSBC did not intend to record *each specific conversation at issue*, Rojas could not establish that HSBC had the requisite intent for purposes of violating section 632(a) or section 632.7(a).  (Citing *People v. Superior Court (Smith)* (1969) 70 Cal.2d 123 (*Smith*).)

Rojas opposed the motion.  With regard to the issue whether HSBC *intentionally* recorded the telephone calls, Rojas argued both that HSBC had not met its initial burden, but even if it did, that there were triable issues of material fact.  HSBC replied to Rojas's opposition.

Following oral argument, the trial court took the matter under submission, ultimately granting HSBC's motion for summary judgment.  The court entered judgment in favor of HSBC, and Rojas timely appealed.

II.

STANDARDS OF APPELLATE REVIEW

Because the trial court's judgment is " '*presumed correct*,' " Rojas (as the appellant) has the burden of establishing reversible error.  (*Denham v. Superior Court*

---

[8]     HSBC's motion raised other arguments as well.  However, because we will be concluding that HSBC did not meet its initial burden of establishing that it did not "intentionally" record the calls for purposes of sections 632(a) and 632.7(a)—a necessary element in each of Rojas's causes of action against HSBC (see fns. 5 and 6, *ante*)—the resolution of those issues will not affect the disposition of the appeal.  Thus, we neither reach nor express an opinion on them.

5

(1970) 2 Cal.3d 557, 564; *Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 535 (*Swigart*) [appeal from defense summary judgment].)

We review de novo an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) As a practical matter, " ' "we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." ' " (*Swigart, supra*, 13 Cal.App.5th at p. 536.) In doing so, we consider all of the admissible evidence and reasonable inferences therefrom in a light most favorable to Rojas (as the opposing party). (*Aguilar*, at p. 843.)

A defendant like HSBC is entitled to a summary judgment on the basis that the "action has no merit" (Code Civ. Proc., § 437c, subd. (a)) only where the court is able to determine from the evidence presented that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (*id.*, subd. (c)). A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established or an affirmative defense to the cause of action can be established. (*Id.*, subd. (o).)

Thus, the moving defendant has the ultimate burden of *persuasion* that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 850, 853-854.) In attempting to achieve this goal, the defendant has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar*, at p. 850.) If the defendant

6

meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact. (*Id.* at pp. 850-851.)

Applying these concepts in our de novo review of the grant of a summary judgment, therefore, we first must determine whether HSBC's initial showing establishes an entitlement to judgment in HSBC's favor. (*Aguilar*, *supra*, 25 Cal.4th at p. 850; *Swigart, supra*, 13 Cal.App.5th at p. 536.) If so, we then determine whether Rojas's responsive showing establishes a triable issue of material fact. (*Aguilar*, at pp. 850-851; *Swigart*, at p. 536.)

In interpreting the statutes at issue, as with all statutory interpretation, we attempt "to ascertain and effectuate the law's intended purpose." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246.) We begin by giving the statutory language its "ordinary meaning," construing it in context and keeping in mind "the overarching structure of the statutory scheme." (*Ibid.*) Statutory interpretation is considered de novo. (*Id.* at p. 1247.)

## III.

## DISCUSSION

To establish a violation of either section 632(a) or section 632.7(a), in addition to other elements, both statutes require a showing that HSBC "*intentionally*" recorded the confidential telephone calls at issue. (Italics added; see fns. 5 and 6, *ante*.) The issue on appeal is whether, for purposes of determining a potential violation of section 632(a) or section 632.7(a), as a matter of law, HSBC did not *intentionally* record the telephone calls to which Rojas was a party.

7

HSBC attempted to meet its initial burden on summary judgment by establishing that Rojas could not show that HSBC *intentionally* recorded the calls. At times HSBC argues that it did not intend to record any specific call that, in fact, contained Rojas's confidential communications, and at times HSBC argues that it did not intend to record any specific call between Rojas and her daughter. Based on HSBC's actions and the statutory language at issue, however, neither position is defensible. Consistent with her position in the trial court, Rojas argues that, because HSBC was using, and knew it was using, a full-time telephone call recording system that recorded *all calls* during the period of time when HSBC recorded the 317 conversations at issue, HSBC *intentionally* recorded the calls that contained Rojas's confidential communications—in violation of both section 632(a) and section 632.7(a).

> In enacting the Privacy Act in 1967, the Legislature made the following findings:
>
> "[A]dvances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (§ 630; Stats. 1967, ch. 1509, p. 3584, § 1.)

Even more helpful to our analysis, in 1967 the Legislature declared its original intent, which was "to protect the right of privacy of the people of this state." (§ 630; Stats. 1967, ch. 1509, p. 3584, § 1.) Thirty-five years later, the California Supreme Court described the objective of the Privacy Act as follows: "The purpose of the act was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 769; compare *id*. at

8

p. 768 [prior to Privacy Act, "laws . . . permitted the recording of telephone conversations with the consent of one party to the conversation"].)

In ruling on HSBC's motion, the trial court was presented with the following facts: HSBC recorded (and maintained the recordings of) 317 confidential telephone calls in which Rojas was a party; these recordings were made by a full-time telephone call recording system that was always in operation, recording *all* calls made from the designated HSBC company telephone; HSBC *knew* that its full-time recording system was "recording every phone call" on any designated telephone; with the full-time system, HSBC recorded the telephone calls "absolutely on purpose"; and HSBC authorized its employees to use company telephones for personal calls, expressly advising them that their "personal calls may be recorded."

Despite this evidence, *none of which HSBC disputed*, HSBC contends that it did not "intentionally"—for purposes of sections 632(a) and 632.7(a)—record the 317 calls at issue. According to HSBC, "the mere act of HSBC installing a recording device on company phones and 'by chance' recording non-work related calls between [Rojas] and [her d]aughter does not satisfy the 'intentional' requirement of [s]ections 632 and 632.7." We disagree. HSBC relies on *Smith, supra,* 70 Cal.2d 123, and *People v. Buchanan* (1972) 26 Cal.App.3d 274 (*Buchanan*)—neither of which supports HSBC's position.

In *Smith*, a criminal case, the issue was whether certain tape recorded conversations were obtained in violation of former section 653j, the predecessor to

9

section 632 under consideration here.[9] (*Smith, supra*, 70 Cal.2d at p. 125.) Hoping to expose the source of certain business losses caused by an internal "leak," the defendant business owner hired a private investigator to install a voice-activated tape recorder that would record all conversations, including telephone conversations, in the defendant's offices. (*Id.* at p. 126.) After the investigator purchased and installed the tape recording equipment as directed by the defendant, the investigator began testing it. (*Ibid.*) The results of the testing included conversations that were recorded both automatically (i.e., noise-activated) and manually. (*Ibid.*) As events developed, defendant was charged with a crime, the tapes were potential evidence, and it was the defendant who contended that the tape recordings were made in violation of the applicable statute.[10] (*Smith,* at pp. 126-127.) As in the present case, the conversations were deemed to be confidential, and the only issue on appeal was whether the investigator "intentionally" recorded them. (*Id.* at pp. 127, 131.)

---

[9]     The language involving intent in former section 653j, subdivision (a), is the same as in section 632(a). (*Smith, supra*, 70 Cal.2d at p. 131, fn. 7.) Former section 653j, subdivision (a) precluded anyone " 'not a party to the communication' " from " '*intentionally* and without the consent of any party to a confidential communication' " from " 'record[ing] a confidential communication' " " 'by means of any electronic amplifying or recording device.' " (*Smith,* at p. 131, fn. 7, italics added; compare § 632(a) [fn. 5, *ante*].)

[10]     The defendant sought to exclude the recordings from evidence at his criminal trial. (*Smith, supra*, 70 Cal.2d at p. 125.) Former section 653j, subdivision (d) provided that any evidence obtained in violation of former subdivision (a) is inadmissible in court. Current section 632, subdivision (d) contains a similar prohibition against the admissibility of evidence obtained in violation of section 632(a).

The Supreme Court began its analysis by rejecting the defendant's statutory interpretation that "intent to record" meant just putting the recording equipment in operation. (*Smith, supra,* 70 Cal.2d at p. 132.) Rather, "the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication" is insufficient to constitute an offense. (*Id.* at p. 133.) Emphasizing that the recordings were made as part of the testing of the recording system, the court explained, "it is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication." (*Id.* at p. 133.)

In remanding the matter to the trial court to determine whether the investigator *intentionally* recorded the confidential communication,[11] our high court provided the following guidance: "[T]he recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or *with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation*." (*Smith, supra*, 70 Cal.2d at p. 134, italics added; accord, *Marich v. MGM/UA Telecommunications, Inc.* (2003) 113 Cal.App.4th 415, 421, 428-430 (*Marich*).) The court's concern was that the statute "provide[] effective protection against 'eavesdroppers' without penalizing the innocent use of recording equipment." (*Smith*, at p. 134.) Almost

_____

[11]    The remand was necessary, because generally determination of the issue whether "a person possessed the *requisite intent* [*under the Privacy Act*] *is* 'a question of fact.' " (*Smith, supra*, 70 Cal.2d at p. 134, italics added.)

a decade later, the Supreme Court summarized its conclusion in *Smith* as follows: Former section 653j, subdivision (a) "required an intent *to record a confidential communication*, rather than simply an intent to turn on a recording apparatus which happened to record a confidential communication." (*Estate of Kramme* (1978) 20 Cal.3d 567, 572, fn. 5.)

Under this standard, HSBC did not meet its initial burden of establishing, as a matter of law, that it lacked the requisite intent to trigger a violation of section 632(a) or section 632.7(a). Contrary to the defendant in *Smith*, HSBC did not merely record confidential communications while testing its recording equipment; in the language of the *Smith* opinion, the 317 calls at issue here were not recorded " 'by chance' " or "innocent[ly]." (*Smith, supra,* 70 Cal.2d at pp. 133, 134.) HSBC knew that it was recording—and, indeed, purposefully was recording—*all* of the calls, having previously told its employees that they were authorized to use HSBC telephones for personal use and that their personal calls might be recorded. On this record, HSBC did not establish, as a matter of law, that for purposes of the Privacy Act HSBC did not *intentionally* record the 317 calls at issue. Stated differently, on this record, a reasonable trier of fact could find that HSBC had the requisite intent under sections 632(a) and 632.7(a).

HSBC's other authority, *Buchanan, supra*, 26 Cal.App.3d 274, is equally unavailing. There, a switchboard operator "inadvertently" overheard a telephone conversation during the "moment[]" in time that she was required to stay on the line to ensure a proper connection. (*Id.*, at p. 281.) Under such circumstances, the appellate court had little difficulty concluding that the operator did not *intentionally* eavesdrop on a

telephone call in violation of the Privacy Act. (*Id.* at p. 288.) In contrast, there is nothing inadvertent or momentary about HSBC recording the 317 telephone calls at issue here; HSBC was *purposefully* recording *all* of the calls on the telephone lines from which the 317 communications at issue were recorded.

A considerable portion of HSBC's brief focuses on HSBC's disclosures to Rojas's daughter regarding HSBC's practice of recording calls, Rojas's daughter's knowledge of HSBC's company policy of recording calls, and Rojas's knowledge that the 317 calls were being placed to her from HSBC telephones.[12] Such a showing, even assuming it is uncontested, does not conclusively establish a lack of intent for purposes of section 632(a) or section 632.7(a).

For the foregoing reasons, HSBC did not meet its burden of establishing as a matter of law that it did not have "knowledge to a substantial certainty that [its] use of the equipment w[ould] result in the recordation of a confidential conversation" of an employee and a third party like Rojas. (*Smith, supra,* 70 Cal.2d at p. 134, quoted in *Marich, supra*, 113 Cal.App.4th at pp. 421, 428.) HSBC purposefully used a full-time recording system to record all of the calls on certain telephone lines. Unlike the

---

12    For example, HSBC suggests that "the recordings were merely incidental and caused by [Rojas's d]aughter's improper use of HSBC's company phone." HSBC does not explain what it means by "improper use" of the phone, since its written policy authorized its employees to use company telephones for personal calls, expressly advising them that their "personal calls may be recorded." Moreover, HSBC does not explain how *Rojas's daughter's* use of the telephone affects *Rojas's* claim, since Rojas was not subject to HSBC's policies on employee telephone use. The uncontested facts on this record are that, regardless of what *Rojas's daughter* may have known or consented to, *Rojas* never knew about or consented to the recording of any telephone calls.

13

authorities on which HSBC relies, the 317 confidential communications at issue here were not, as a matter law, recorded either " 'by chance' " or "innocent[ly]" as in *Smith*, at pages 133, 134 or "inadvertently" or "momentarily" as in *Buchanan, supra*, 26 Cal.App.3d at page 281. The trial court thus erred in ruling that HSBC met its initial burden and, accordingly, in granting HSBC's summary judgment motion.

DISPOSITION

The judgment is reversed, and on remand the trial court is directed to enter an order denying HSBC's motion for summary judgment or, in the alternative, summary adjudication of Rojas's first amended complaint. Rojas is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.

Filed 2/9/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DALIA ROJAS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HSBC CARD SERVICES INC. et al., <br><br> Defendants and Respondents. | D071442 <br><br> (Super. Ct. No. 37-2014-00023795-CU-MC-NC) <br><br> ORDER CERTIFYING REQUEST FOR PUBLICATION |

THE COURT:

The opinion in this case filed January 16, 2018 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a), for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

HUFFMAN, Acting P. J.

Copies to: All parties

15