[No. B199059. Second Dist., Div. Six. Apr. 1, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CHESTER WILLIAMS, Defendant and Appellant.

## COUNSEL

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—In this case we are asked to decide whether Judicial Council of California Criminal Jury Instructions (2007–2008) CALCRIM No. 416, the

uncharged conspiracy instruction, is constitutional. We uphold the instruction and reject claims that it impermissibly directs jurors to find that a conspiracy exists, reduces the burden of proof, and violates a defendant's constitutional rights to a jury trial and due process of law.

Chester Williams appeals from a judgment following his conviction, after a jury trial, of selling cocaine base. (Health & Saf. Code, § 11352, subd. (a).) He admitted that he had served four prior prison terms, had a prior robbery conviction within the meaning of the "Three Strikes" law (Pen. Code, §§ 211, 667.5, subd. (b)–(i)), and had a prior drug-related conviction with a Health and Safety Code section 11370.2 enhancement. The trial court sentenced him to state prison for nine years, after doubling a low, three-year base term for selling cocaine base and imposing a consecutive three-year enhancement. (Pen. Code, § 667, subd. (e)(1); Health & Saf. Code, §§ 11352, subd. (a), 11370.2.) It also awarded him 160 days of actual presentence custody credit and 80 days of conduct credit. We modify the judgment to reflect one additional day of actual presentence custody credit and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2006, at approximately 5:00 p.m., Los Angeles Police Department Officer Dalila Vizcarra was working as an undercover narcotics officer, with several other officers, at Gladys Avenue and Fifth Street in Los Angeles. She wore plain clothing and carried prerecorded "buy money," including two $20 bills and a $5 bill.

While walking on the west side of Gladys Avenue, Vizcarra saw appellant. Using the street vernacular for $20 worth of narcotics, she asked him, "Hey, you have a $20?" Appellant said he did, and told her to give him the money. She gave him a prerecorded $20 bill. At the same time, a man paid him $5 for cocaine. Appellant told Vizcarra and the male customer to wait.

A white makeshift "tent," fashioned from a tarp, stood on the west side of Gladys Avenue, approximately 20 feet from Vizcarra. Appellant approached the white tent and partially entered it for less than a minute. He returned and gave the male customer some off-white solids that resembled rock cocaine. Vizcarra asked appellant what had happened to her $20, or said something like, "[W]here's my piece?" He told her to "hold on."

Appellant walked back to the white tent, then crossed to the east side of Gladys Avenue, and talked with a group of four or five adults near a green tent. LaSharron Henderson, a woman from that group, approached Vizcarra and said, "When I drop this piece of paper, pick it up." Henderson dropped a white tissue paper. Vizcarra retrieved and examined the tissue paper; it held

off-white rock cocaine solids. Henderson walked approximately five feet away, then returned and asked Vizcarra, "Did you give him the money?" She responded, "Yes," and Henderson walked back toward the green tent.

Other Los Angeles Police Department officers arrested and searched appellant. They found no cocaine or prerecorded money in his immediate possession. Los Angeles Police Department Detective Bip Kanchanamongkol recovered a cell phone holder near the white tarp on the west side of Gladys Avenue. The cell phone holder contained $100, including the prerecorded $20 bill that Vizcarra had used to buy cocaine from appellant. A woman named "Ms. Hollins," who sat nearby, claimed the money in the cell phone holder. Kanchanamongkol found off-white solids resembling rock cocaine near the cell phone holder and in Hollins's sock.

## DISCUSSION

■ The trial court gave the jury uncharged conspiracy instructions, including CALCRIM No. 416. Appellant contends that CALCRIM No. 416 impermissibly directed the jury to find that a conspiracy existed, reduced the burden of proof, and violated his constitutional rights to a jury trial and due process of law. We disagree.

■ Before trial, the prosecution requested aiding and abetting instructions but did not request uncharged conspiracy instructions. Later, before final argument, the prosecutor indicated that the "conspiracy-related instructions [were] actually more on point than the aiding and abetting instructions" because "based on the facts in . . . this case . . . there isn't one person who committed the crime." She further explained that "[t]he People's theory is that the crime was committed together, one receiving payment, which according to the People's theory is [appellant], and the other person giving away the contraband, the narcotics." Appellant's counsel objected to the uncharged conspiracy instructions. Where the prosecutor did not charge conspiracy as an offense, but introduced evidence of a conspiracy to prove liability, the court had a sua sponte duty to give uncharged conspiracy instructions. (Bench Notes to CALCRIM No. 416, p. 200, citing *People v. Pike* (1962) 58 Cal.2d 70, 88 [22 Cal.Rptr. 664, 372 P.2d 656]; *People v. Ditson* (1962) 57 Cal.2d 415, 447 [20 Cal.Rptr. 165, 369 P.2d 714].)

In challenging CALCRIM No. 416, appellant primarily criticizes its title, "Evidence of Uncharged Conspiracy," and its first paragraph, which reads: "The People have presented evidence of a conspiracy. A member of a conspiracy is criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy." He claims that this language displaces the jury's function as the sole

fact finder by directing it to find that a conspiracy did exist and improperly shifts the burden to him to prove that there was no conspiracy, unlike the distinct language of CALJIC No. 6.10.5, "Conspiracy and Overt Act-Defined-Not Pleaded as a Crime Charged."

■ CALCRIM No. 416 does not direct the jury to find that a conspiracy did exist. Instead, it provides an explicit description of the elements of conspiracy that the prosecution must prove: (1) The defendant intended to agree and did agree with one or more members of the conspiracy to commit the unlawful sale or furnishing of a controlled substance; (2) at the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit the unlawful sale or furnishing of a controlled substance; (3) the defendant or one of the members of the conspiracy committed at least one of the following overt acts to accomplish the unlawful sale or furnishing of a controlled substance: accepting money in exchange for a controlled substance or delivering a controlled substance; and (4) at least one such overt act was committed in California.

Further, CALCRIM No. 416 includes clear language explaining that it is for the jury to decide whether the prosecution has proved the elements of conspiracy. For example, it instructs the jury that "[t]o decide whether the defendant committed [the requisite] overt acts, [it must] consider all of the evidence presented about the acts." It further instructs the jury that "[t]o decide whether the defendant and one or more of the other [conspirators] intended to commit the unlawful sale or furnishing of a controlled substance, [it must] refer to the separate instructions . . . on that crime," etc. Thus, rather than directing the jury to find that a conspiracy existed, CALCRIM No. 416 instructs the jury to decide whether the prosecution proved the elements of a conspiracy as well as whether the defendant was a member of the conspiracy.

■ In addition, appellant argues that CALCRIM No. 416 is erroneous because it "fails to set forth the two prong specific intent requirement, [i.e.,] that a conspiracy is an agreement between two or more people with the specific intent to agree to commit an offense and the specific intent to commit the offense." Although conspiracy does require "dual specific intents: a specific intent to agree to commit the target offense, and a specific intent to commit that offense" (*People v. Jurado* (2006) 38 Cal.4th 72, 123 [41 Cal.Rptr.3d 319, 131 P.3d 400]), appellant failed to request clarification of the intent requirement below. Moreover, his argument is based on a faulty understanding of the nature of general and specific intent. ■ General intent exists where the defendant intentionally does some act or fails to do some act; specific intent exists where, in doing the act or failing to do the act,

the defendant intends a particular result. (See, e.g., *People v. Hood* (1969) 1 Cal.3d 444, 456 [82 Cal.Rptr. 618, 462 P.2d 370].) As the guide for using the CALCRIM instructions explains: "The instructions do not use the terms general and specific intent because while these terms are very familiar to judges and lawyers, they are novel and often confusing to many jurors. Instead, if the defendant must specifically intend to commit an act, the particular intent required is expressed without using the term of art 'specific intent.' " (Judicial Council of Cal., Crim. Jury Instns., *supra*, General and Specific Intent, p. xxvi.)

In order to instruct a jury that a particular crime requires a specific intent, it is not helpful simply to say the defendant must have a specific intent. Rather, it is preferable that the jury be informed what particular intent is required. This is what CALCRIM No. 416 does, as given here, in listing the previously described elements of conspiracy. For example, the first element in CALCRIM No. 416 requires a specific intent to enter an agreement with another member of the conspiracy to commit the unlawful sale or furnishing of a controlled substance. The second element requires that defendant and his coconspirator specifically intended that one of them would commit the unlawful sale or furnishing of a controlled substance. It would have added nothing to insert the word "specific," or "specifically," into CALCRIM No. 416.

We also reject appellant's claim that CALCRIM No. 416 reduced the prosecution's burden of proof. The correctness of jury instructions must be determined from the entire charge of the court, not from parts of a single instruction. (*People v. Burgener* (1986) 41 Cal.3d 505, 538–539 [224 Cal.Rptr. 112, 714 P.2d 1251], disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 753–754 [80 Cal.Rptr.2d 734, 968 P.2d 445].) Appellant was not charged with conspiracy; he was charged with selling or furnishing a controlled substance. The court instructed the jury with CALCRIM No. 220 that the prosecution was required to prove defendant "guilty beyond a reasonable doubt" and explained that it must find him not guilty "[u]nless the evidence prove[d] the defendant guilty beyond a reasonable doubt." Considered as a whole, the instructions did not reduce the prosecution's burden of proof.

Appellant requests that this court correct a miscalculation of his custody credits by adding one additional day of actual presentence custody credit. Respondent joins in appellant's request.

Therefore, the judgment is modified to reflect 161 days of actual presentence custody credit plus 80 days of conduct credit. The trial court shall amend the abstract of judgment accordingly and forward it to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 2008, S163244.