Filed 2/16/22  P. v. Davies CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES CLINTON DAVIES,<br><br>    Defendant and Appellant. | F080824<br><br>(Super. Ct. No. MF013419A)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on February 8, 2022, be modified in the following particulars:

1.     In footnote 6 on page 9 between the words "appellant's" and "objection" the words "lack of" will be added.  The modified footnote reads as follows:

> Respondent concedes that, despite appellant's lack of objection below to this instruction, appellate review is permissible in this situation because appellant's substantial rights are implicated.  (§ 1259.)

Appellant's petition for rehearing is denied.  Except for the modification set forth herein, the opinion previously filed remains unchanged.  The modification does not alter the judgment.

                                                            Levy, Acting P. J.

WE CONCUR:

Poochigian, J.

Meehan, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>              v.<br><br>JAMES CLINTON DAVIES,<br><br>        Defendant and Appellant. | F080824<br><br>(Super. Ct. No. MF013419A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

# INTRODUCTION

Appellant James Clinton Davies surreptitiously recorded a conversation he had with his local police chief while they were in the chief's office. A police lieutenant was also present, and appellant discussed his own uncharged criminal matter with the chief. Unbeknownst to the officers, appellant recorded the conversation as a video on his cellular phone. A short time later, appellant posted the video on Facebook.

A jury convicted appellant of recording a "confidential communication" in violation of Penal Code section 632, subdivision (a).[1] Following this felony conviction, appellant was placed on formal probation for three years.[2]

Appellant raises a number of issues in the present appeal, including alleged instructional errors and a violation of his rights under the First Amendment of the United States Constitution.[3] We agree with appellant that multiple prejudicial instructional errors occurred, which require reversal of his judgment. The court did not make it clear that, in order to establish guilt, the prosecution was required to prove that appellant intended to record a confidential communication. The court also erroneously instructed that a mistake of fact was not a legal defense for intent. Together, these errors strongly suggested to the jury that appellant could be convicted even if he lacked criminal intent and/or he reasonably believed the conversation was not confidential. We remand for further proceedings.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] "A violation of this provision is a 'wobbler,' as it is punishable either by a term in state prison or imprisonment in county jail or by both fine and imprisonment. [Citations.]" (*People v. Lyon* (2021) 61 Cal.App.5th 237, 256 (*Lyon*).)

[3] All future constitutional references are to the United States Constitution unless otherwise noted. The First Amendment is applicable to the states through the due process clause of the Fourteenth Amendment. (*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council* (1976) 425 U.S. 748, 749, fn. 1.)

2.

## BACKGROUND

We summarize the material facts that support appellant's conviction.

## I. Appellant Meets With The Chief Of Police.

On the afternoon of May 7, 2019, appellant entered the lobby of the Tehachapi Police Department and he asked to speak with the chief of police. The chief agreed to meet with appellant, and a lieutenant escorted appellant to the chief's office.

The lieutenant took appellant through a locked door. Appellant was not searched before being led through the door, which separated the lobby from the area where police personnel worked. It is uncommon for members of the public to enter through this locked door. According to the police officers at trial, the space behind this locked door is considered a "restricted" area.

## II. Appellant Records The Conversation.

Appellant spoke with the chief while inside the chief's office. The lieutenant was present during the conversation. The door to the chief's office remained open. At trial, the lieutenant testified that the chief had asked him to stay in the office with them because appellant "has had some issues in the past with the police department."

Unbeknownst to the chief or the lieutenant, appellant recorded this encounter as video on his cellular phone.[4] At no point did appellant tell the officers that he was recording the conversation, and appellant never asked if he could record. At trial, a copy of appellant's video was played for the jury.

In the video, the chief asks appellant if he is okay, and appellant indicates that he is not. Appellant informs the chief that a male, D.R., had just "beaten" him, and appellant wanted to know why D.R. was not in custody. Appellant complained that he had been "assaulted," he had been "thrown on the ground" and he was hit "12 times."

---

**4** Appellant started the recording on his cellular phone while he was still in the lobby and before he was escorted through the locked door.

Appellant stated he had various bruises on his body. According to appellant, D.R. had also assaulted appellant's friend, and "blood splatters" were in appellant's living room.

The chief responded that appellant had "brought up" appellant's friend to the police station earlier that day, and appellant's friend "did not want to pursue anything." The chief explained that law enforcement considered the fight to be "a misdemeanor assault" that was not committed in their presence.

Appellant responded that he was "coming back" with someone, and he had "the shit beat—beaten out of me." The chief asked appellant to "have a seat" to discuss this. Appellant said, "he stole my car keys" when he was "on his way out the door."

The chief interjected that "this has happened multiple times" with appellant, and it was the chief's understanding from officers that appellant initially wanted D.R. arrested but D.R. also wanted appellant arrested. The chief stated that "both parties" had been fighting, which amounted to "mutual combat" and "misdemeanor batteries."

Appellant said he was "going to leave now. You know, I mean, I got the shit—I got pummeled today." He stated that he "tried to diffuse the situation. My friend wanted to go find his friends and go down and find [D.R.] and kick his ass. I said, no. Go down to the station, let's just file a report."

Appellant left the chief's office. The chief was recorded saying, "Come here, come here." Appellant answers, "No sir." The recording ends.

At trial, the chief and the lieutenant testified that appellant appeared angry and upset during this brief meeting. Appellant was yelling. According to the lieutenant, appellant appeared possibly intoxicated.

## III.    Law Enforcement Discovers The Recording.

That same afternoon, a dispatcher working at the Tehachapi Police Department saw a posting on Facebook. The posting was in a closed group that discusses issues related to Tehachapi. The dispatcher was a member of the group that had access to this

4.

posting, which was a video that depicted the chief in his office. The dispatcher alerted a detective, who viewed the video on Facebook. The detective recognized the chief. The detective made a recording of that video.

On trial cross-examination, the detective agreed that, when he saw the video on Facebook, he was concerned about "negative publicity" against the chief.

## IV. Appellant Admits To Law Enforcement That He Made And Posted The Recording.

The day after this recording was made and posted on Facebook, the lieutenant and the detective visited appellant at his residence. They spoke with appellant outside. This conversation was recorded by the officers, and it was played at trial.

In the recording, appellant made statements that indicated he had recorded the chief and posted the video on Facebook. The detective asked appellant if he realized the chief's office was a "controlled area," and appellant said that he did not. Appellant admitted that he never told the chief that he was going to record him. When asked if he thought it would have been better to inform the chief that he was recording, appellant responded, "I mean, you guys can record me at any time."

Appellant indicated that he posted the video on Facebook because he was upset. The detective informed appellant that he (appellant) must have known that the area near the chief's office was not public because of the "key encoded locked door." Appellant disagreed because the area seemed "wide open." Appellant said that he "never considered it."

## V. Both The Chief And The Lieutenant Believed The Recorded Conversation Was Confidential.

At trial, both the chief and the lieutenant testified that they were unaware appellant was recording the conversation when appellant spoke with the chief in the chief's office. The chief testified that he regarded his office as an "authorized restricted area." An

escort is necessary. The chief was concerned that "sensitive information" could be recorded.

The detective told the jury that he had concerns about a person coming to the police department and recording communications in the restricted area. The detective said victims, witnesses, informants, and "extensive confidential information" could be present, which the public is not "privy to see." The detective testified that a person such as appellant "could accidentally record side conversations that we don't want the public to hear about, active investigations. Gives the layout of the facility for a potential ambush. The list can go on."

## DISCUSSION

We summarize section 632 before addressing the instructional errors that occurred in this matter.

## I.     A summary of section 632.

The California Invasion of Privacy Act, section 630 et seq., was enacted in 1967 for the purpose of protecting the right of privacy by, among other things, "requiring that all [persons] consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768–769 (*Flanagan*).) Section 632 makes it a crime for a person to use an "electronic amplifying or recording device to eavesdrop upon or record" a "confidential communication." (§ 632, subd. (a).) To constitute a crime, the defendant must eavesdrop or record "intentionally and without the consent of all parties" to the confidential communication.[5] (§ 632, subd. (a).)

---

[5]     This may occur "among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." (§ 632, subd. (a).) A defendant "shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per

6.

A key issue in this matter is the definition of what constitutes a "confidential communication." Section 632 defines this as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (§ 632, subd. (c).) Section 632 is violated "the moment a confidential communication is recorded without consent, regardless of whether it is subsequently disclosed. [Citation.]" (*Marich v. MGM/UA Telecommunications, Inc.* (2003) 113 Cal.App.4th 415, 425.)

In *Flanagan*, the California Supreme Court endorsed the following test for determining confidentiality of a communication: " '[U]nder section 632 "confidentiality" appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is "listening in" or overhearing the conversation.' " (*Flanagan*, *supra*, 27 Cal.4th at pp. 772–773, italics omitted.) The high court stated, "a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Flanagan*, *supra*, 27 Cal.4th at pp. 776–777.)

## II. Reversal Of Appellant's Judgment Is Required Due To Prejudicial Instructional Errors.

Appellant raises multiple claims of instructional error, and some of his arguments have merit.

A de novo standard of review is used in assessing whether jury instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) We must "view the challenged instruction in the context of the instructions as a whole and the trial record

---

violation, by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment." (*Ibid.*)

7.

to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner. [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)

As we explain, the trial court did not make it clear that, in order to find appellant guilty, the jury was required to determine that he intended to record a confidential communication. In addition, the jury was erroneously instructed that a mistake of fact was not a legal defense for intent.

### A.     An essential element of the offense was omitted.

At the time of this trial, no standard jury instruction existed for an alleged violation of section 632, subdivision (a). As a result, the parties drafted their own.

The court gave the jurors the following instruction for the charge in count 1:

> "THE COURT: All right. Special Instruction Number 1. [Appellant] is charged in Count 1 with recording a confidential communication, in violation of [section 632, subdivision (a)].
>
> "To prove [appellant] is guilty of this crime, the People must prove that, one, [appellant] intentionally used a recording device to record a communication; two, at the time of the recording, one of the parties to the communication desired it to be confidential; three, at the time of the recording, any party to the communication knew or reasonably should have known that the conversation was confidential; and four, all parties to the conversation did not consent to the recording.
>
> "Someone commits an act intentionally when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage.
>
> "A recording device is any object that is capable of recording sound and/or images. It includes, but is not limited to, a telephone, cellular phone, computer, video recorder, camcorder, digital recorder—digital recorder or audio recorder.
>
> "The term confidential communication means any communication carried on in this—carried on in circumstances a [*sic*] may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes any circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

8.

"When deciding whether a party's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the party and consider what a reasonable person, in a similar situation, with similar knowledge, would have believed.

"It is not required that the recording be disseminated, published, posted online or broadcast, but if the recording was disseminated, published, posted online, or broadcast, you may consider that fact, along with all the other evidence, in deciding whether [appellant] committed the crime.

"Mistake of fact is not a legal defense for intent."

As we explain below, this jury instruction was defective in two ways: first, it failed to address adequately the intent or knowledge required by appellant to find him criminally liable under section 632, subdivision (a).[6] Second, it incorrectly stated that a mistake of fact was not a legal defense for intent. We address both issues.

1. **A violation of section 632, subdivision (a) requires a defendant to intentionally record a confidential communication.**

In the Fall of 2021, CALJIC No. 13.01 was drafted as a proposed jury instruction for an alleged violation of section 632, subdivision (a).[7] This instruction reads as follows:

---

[6] Respondent concedes that, despite appellant's objection below to this instruction, appellate review is permissible in this situation because appellant's substantial rights are implicated. (§ 1259.)

[7] Effective January 1, 2006, the Judicial Council has adopted the California Criminal Jury Instructions (CALCRIM) and it withdrew its endorsement of CALJIC. Use of CALJIC instructions is subject to rule 2.1050(e) of the California Rules of Court. "Use of the Judicial Council instructions is strongly encouraged. If the latest edition of the jury instructions approved by the Judicial Council contains an instruction applicable to a case and the trial judge determines that the jury should be instructed on the subject, it is recommended that the judge use the Judicial Council instruction unless he or she finds that a different instruction would more accurately state the law and be understood by jurors. Whenever the latest edition of the Judicial Council jury instructions does not contain an instruction on a subject on which the trial judge determines that the jury should be instructed, or when a Judicial Council instruction cannot be modified to submit the issue properly, the instruction given on that subject should be accurate, brief,

9.

"Defendant is accused [in Count[s] _____] of having committed the crime of eavesdropping on or recording confidential communications, a violation of section 632, subdivision (a) of the Penal Code.

"Any person who intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another, or by means of a telegraph, telephone or other device, except a radio, is guilty of having violated Penal Code section 632, a crime.

"For the purposes of this instruction, 'person' means [an individual] [,] [business association] [,] [partnership][,] [corporation] [,] [limited liability company] [,] [or other legal entity] [,] [and] [an individual acting or purporting to act for or on behalf of any government or subdivision thereof] [,] whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.

"For the purposes of this instruction, 'confidential communication' means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

"In order to prove this crime, the following elements must be proved:

"1.    A person used an electronic amplifying or recording device to eavesdrop on or record a confidential communication;

"2.    The communication was carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device except a radio; and

understandable, impartial, and free from argument." (Cal. Rules of Court, rule 2.1050(e).)  We encourage the Judicial Council Advisory Committee on Criminal Jury Instructions to consider formulating a pattern instruction for an alleged violation of section 632, subdivision (a).  (Cf. CACI No. 1809, Recording of Confidential Information, §§ 632, 637.2.)

10.

"3. That person did not have the consent of all the parties to the confidential communication." (CALJIC No. 13.01.)

We cannot declare that CALJIC No. 13.01 is a model of clarity. However, this form instruction does state, in material part, that a person is guilty under section 632, subdivision (a), if the person "intentionally and without the consent of all parties to a confidential communication" uses a recording device "to eavesdrop upon or record the confidential communication." (CALJIC No. 13.01.) In the present matter, no such instruction was given to the jury. Instead, appellant's jurors were told that appellant was guilty if he "intentionally used a recording device to record a communication." The jurors were instructed that appellant was guilty if, at the time of the recording, one of the parties to the communication desired it to be confidential; any party to the communication knew or reasonably should have known that the conversation was confidential; and all parties to the conversation did not consent to the recording. The instruction given in this matter erroneously suggested that appellant could be convicted even if he lacked an intent to record a confidential communication. This represented instructional error.

In *Lyon*, *supra*, 61 Cal.App.5th 237, the defendant clandestinely videotaped prostitutes at a private residence, and he was convicted of six counts of eavesdropping on or recording confidential communications (§ 632, subd. (a)) and two counts of disorderly conduct (§ 647, subd. (j)(3)(A)). (*Lyon*, at p. 242.) The Third Appellate District found no instructional error when the trial court informed the jury, in relevant part, that to prove a defendant is guilty of violating section 632, subdivision (a), the People must prove the following: (1) the defendant intentionally and without consent of all parties to a communication; (2) used an electronic amplifying or recording device; (3) to eavesdrop upon or record a confidential communication. (*Lyon*, at p. 251.) The trial court provided a definition of "confidential communication" that tracked the statutory language. (*Ibid.*) The appellate court held that the trial court's instruction "correctly stated the law. The

11.

instruction tracked the language of the statutory text defining the crime and included the definition of 'confidential communication,' which adequately conveyed the elements of the offense. The jury was also properly instructed on the People's burden of proof, and was told that it 'must determine whether or not the circumstances of the recording reasonably indicate that a party to the communication desired it to be confined to the parties to the communication.' " (*Id.* at pp. 253–254.)

Unlike what occurred in *Lyon*, the instruction given in this matter failed to track the language of the statutory text defining the crime. Appellant's jury was never informed that he was guilty if he intentionally and without the consent of all parties to a communication used an electronic recording device to record a confidential communication. Instead, the instruction suggested that appellant could be convicted even if he reasonably believed the conversation was not confidential.

In *People v. Superior Court of Los Angeles County (Smith)* (1969) 70 Cal.2d 123 (*Smith*), our Supreme Court discussed former section 653j,[8] which is the predecessor of section 632. Our high court's comments are instructive and further clarify why instructional error occurred in this matter.

In *Smith*, the issue on appeal was whether certain tape-recorded conversations were obtained in violation of former section 653j. (*Smith, supra*, 70 Cal.2d at p. 125.) The defendant was a business owner who hired a private investigator to install a voice-activated tape recorder that would record all conversations, including telephone conversations, in the defendant's offices. The defendant hoped to expose the internal source of certain business losses. (*Id.* at p. 126.) After the investigator purchased and

---

[8]   The subject matter in former section 653j is now covered by section 632. (*Smith, supra*, 70 Cal.2d at p. 131, fn. 7.) Former section 653j, subdivision (a), precluded anyone " 'not a party to the communication' " from " 'intentionally and without the consent of any party to a confidential communication' " from " 'record[ing] a confidential communication' " " 'by means of any electronic amplifying or recording device.' " (*Smith*, at p. 131, fn. 7.)

installed the tape-recording equipment as directed by the defendant, the investigator began testing it. (*Ibid.*) The results of the testing included conversations that were recorded both automatically (i.e., noise activated) and manually. (*Ibid.*) As events developed, the defendant was charged with a crime, the tapes were potential evidence, and it was the defendant who contended that the tape recordings were made in violation of former section 653j.[9] (*Smith*, at pp. 126–127.) The conversations were deemed to be confidential, and the only issue on appeal was whether the investigator had "intentionally" recorded them. (*Id.* at pp. 127, 132.)

The Supreme Court began its analysis by rejecting the defendant's statutory interpretation that "intentionally" recording meant just putting the recording equipment in operation. (*Smith*, *supra*, 70 Cal.2d at p. 132.) Rather, "the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication" is insufficient to constitute an offense. (*Id.* at p. 133.) Emphasizing that the recordings were made as part of the testing of the recording system, the court explained, "it is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication." (*Ibid.*)

In remanding the matter to the trial court to determine whether the investigator intentionally recorded the confidential communications, our high court provided the following guidance: "[T]he recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a

---

**9**     The defendant sought to exclude the recordings from evidence at his criminal trial. (*Smith*, *supra*, 70 Cal.2d at p. 125.) Former section 653j, subdivision (d), provided that any evidence obtained in violation of former subdivision (a) is inadmissible in court. Current section 632, subdivision (d), contains a similar prohibition against the admissibility of evidence obtained in violation of section 632, subdivision (a). In 2019, however, our Supreme Court held that subdivision (d) of section 632 was abrogated by the "Right to Truth-in-Evidence" provision of the California Constitution to the extent subdivision (d) of section 632 demands the suppression of relevant evidence in a criminal proceeding. (*People v. Guzman* (2019) 8 Cal.5th 673, 677.)

confidential conversation, or *with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation.*" (*Smith*, *supra*, 70 Cal.2d at p. 134, italics added.) The high court was concerned that the statute must "provide[] effective protection against 'eavesdroppers' without penalizing the innocent use of recording equipment." (*Smith*, at p. 134.)

Almost a decade later, the Supreme Court summarized its conclusion in *Smith* as follows: "This court held that 'intentionally' in [former section 653j] required an intent to bring about the proscribed result rather than an intent merely to do an act which unintentionally brought about that result. Thus, the court concluded that [former section 653j] required an intent *to record a confidential communication*, rather than simply an intent to turn on a recording apparatus which happened to record a confidential communication." (*Estate of Kramme* (1978) 20 Cal.3d 567, 572–573, fn. 5.)

Turning to the issue before us, there is no material difference between former section 653j and section 632. Based on our high court's prior pronouncements, it is clear that an element of the offense proscribed by section 632, subdivision (a), is the defendant's intent to record (or eavesdrop upon) a confidential communication. (See *Smith*, *supra*, 70 Cal.2d at p. 133.) It is not the purpose of the statute to punish a person who intends to make a recording. Instead, the purpose of the statute is to punish a person who intends to record (or eavesdrop upon) a confidential communication without the consent of all parties thereto. (§ 632, subd. (a).) For purposes of section 632, subdivision (a), the recording of a confidential communication is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential communication, or with the knowledge to a substantial certainty that his or her use of the equipment will result in the recordation of a confidential communication. (See *Smith*, *supra*, 70 Cal.2d at p. 134.) This language from *Smith* provides further grounds to find instructional error in this matter.

14.

**2.    The arguments from the prosecutor did not reasonably clear up the confusion caused by the given instruction.**

When analyzing for instructional error, it is appropriate to review the arguments of counsel.  (*People v. Kelly* (1992) 1 Cal.4th 495, 526; *People v. Nem* (2003) 114 Cal.App.4th 160, 165.)

The arguments from the prosecutor did not reasonably clear up the confusion regarding the required criminal intent needed to convict appellant for a violation of section 632, subdivision (a).  Initially, however, the prosecutor stated that the government had to prove beyond a reasonable doubt that appellant "intentionally used a recording device to record a confidential communication."  Such a comment could have established that instructional error did not occur despite the misleading language given to the jury.  Nevertheless, the prosecutor made other comments that added to the confusion.

The prosecutor argued that appellant had not made a mistake and he "intentionally used a recording device to record a communication."  The prosecutor asserted that the communication was confidential if the circumstances reasonably indicated that any party—appellant, the chief, or the lieutenant—desired it to be confined only to the parties.  According to the prosecutor, the chief reasonably expected privacy in his office, and the lieutenant's presence during this conversation had not negated the chief's expectation of privacy.  The prosecutor contended that appellant "knew or should have known that recording the chief in his private office without consent was violating the chief's right to privacy."  The prosecutor maintained that it was obvious to "a reasonable person" that this was a confidential communication.  The prosecutor stated that the chief believed it was confidential and, at the time of the recording, any party—either the chief, the lieutenant, or appellant—knew or reasonably should have known the conversation was confidential.

The prosecutor informed the jury that publication of the recording was "not required.  It's the recordation, the recording, the act of recording intentionally.  That is

15.

what is required.  There's no other intent beyond that.  There's no other intent to do something in the future.  There's just the intent to use the recording device to record.  Okay?"  The prosecutor argued that, because appellant posted the video online, the jury could consider that as circumstantial evidence to determine appellant's intent.  The prosecutor asked, "Did [appellant] have a realistic expectation that the chief wouldn't have expected this to be a private communication?"

The prosecutor went through each of the required elements.  The prosecutor asserted that "the chief believed" the conversation was confidential, which should have been reasonably known, and all of the parties did not consent to the recording.  The prosecutor stated that the first element was whether appellant "intentionally used a recording device to record a conversation," and the prosecutor reviewed the evidence.  The prosecutor established that appellant intentionally made this recording.

The prosecutor said that the second element was whether, at the time of the recording, the chief "believed it was confidential."  The prosecutor argued that the chief reasonably believed this conversation "was confidential and private" based on the totality of the circumstances.  The prosecutor asserted that "element number two has been proved to you beyond a reasonable doubt that at the time of the recording, the chief himself expected that to be a confidential communication."

Regarding element three, the prosecutor stated, "I have to prove at the time of the recording any party of the conversation knew or reasonably should have known the conversation or the communication was confidential."  This was based on a "reasonable person" standard.  The prosecutor argued that both the chief's and the lieutenant's subjective understandings demonstrated that the communication had been confidential.  The prosecutor reminded the jurors that both of those officers had believed the communication was confidential, and neither had consented to the recording.

The prosecutor also asked the jurors to look at the surrounding circumstances.  A "key fob" was needed to enter the restricted area, and appellant was escorted.  This area

16.

was closed off to the public. The prosecutor argued that appellant was aware, or should have been aware, that this was a confidential communication. Appellant concealed his cellular phone and he never informed the officers that he was recording. The prosecutor noted that appellant never obtained the consent from the officers to record. According to the prosecutor, the fourth element was met, and appellant should be found guilty as charged.

During final summations to the jury, the prosecutor responded to the arguments of defense counsel that appellant should be permitted to record police activity. The prosecutor informed the jurors that a citizen may record a police officer in certain situations, such as being in public. According to the prosecutor, appellant chose to commit a crime "by secretly recording the police officer in a situation where society and the reasonable person would have believed that was a confidential setting, involving confidential communications." Later, the prosecutor stated, "The question is, at the end of the day, did [the chief] have a reasonable expectation of privacy in his private office?" The prosecutor argued that the chief did have such an expectation because he had been in his private office and not out in public. Still later, the prosecutor concluded summation by stating that appellant should have known this was a confidential communication based on the context of the "restricted area" which was a "private setting" for the chief. The prosecutor also argued that appellant "did know that was a confidential communication, which is why he tried to conceal the fact that he was recording this communication with the chief."

At times, the prosecutor made comments that suggested the prosecution was required to prove that appellant had intended to record a confidential communication. The prosecutor also argued at times that appellant knew, or should have known, that he was recording a confidential communication. Such comments, if they had been emphasized, may have been sufficient to inform the jury of the required criminal intent. However, the prosecutor's comments as a whole cannot be read as reasonably clearing up

the confusion caused from the erroneous jury instruction. The prosecutor never made it clear that appellant's knowledge of confidentiality was an element that the government was required to prove beyond a reasonable doubt. Instead, the prosecutor argued that the government had proven that appellant knew he was recording. The prosecutor also asserted that the second element was whether, at the time of the recording, the chief "believed it was confidential." The prosecutor argued that the chief reasonably believed this conversation "was confidential and private" based on the totality of the circumstances. The prosecutor asserted that "element number two has been proved to you beyond a reasonable doubt that at the time of the recording, the chief himself expected that to be a confidential communication."

Moreover, the jurors were instructed with CALCRIM No. 200, which informed them that they were obligated to follow the law as set forth in the court's instructions, and they were to disregard attorney comments that were inconsistent with the instructions. We presume the jury followed the court's instructions. (See *People v. Boyette* (2002) 29 Cal.4th 381, 436.)

Based on the misleading jury instruction and the prosecutor's arguments, it is very likely one or more jurors did not realize the prosecution was required to prove beyond a reasonable doubt that appellant had held an intent to record a confidential communication. A question from the jury, which we discuss below, supports our concerns that the jury was not properly instructed.

### 3.    A question from the jurors suggests they were confused.

The jury retired to deliberate at 2:17 p.m. on January 9, 2020. At 3:39 p.m. that same afternoon, the jury submitted questions to the court, including the following: "The jury would like element three to be simplified.[10] We would like clarification on the

---

**10**    Element "three" appears to refer to the instruction that, "at the time of the recording, any party to the communication knew or reasonably should have known that the conversation was confidential."

18.

word 'any[.]' Is it appropriate to assume that as long as one person in the communication is aware of the confidential communication that is all that is needed to have a consensus?" The trial court met with the attorneys that same day, and they fashioned an agreed upon response. The court informed the jury in writing that "[a] consensus between the parties is not required for elements 2 or 3." The court also wrote that, regarding "clarification of element 3: As long as one person in the communication reasonably believes the communication is confidential (and the jury has determined that belief is reasonable) that element is met. Please review the special jury instruction #1 for further definitions of confidential communications and reasonable belief."

The jury retired for the day at about 4:35 p.m. The following morning at about 9:19 a.m., the jury returned its guilty verdict.

The jury's question strongly suggests it was focused on whether the conversation in question was confidential or not, and whether only one person's belief was needed to deem it confidential. The trial court correctly clarified that only one person needed to have an objectively reasonable belief that the communication was "confidential" for it to fall under section 632. (See *Flanagan*, *supra*, 27 Cal.4th at pp. 776–777.) However, nothing reasonably suggests that the jurors were made aware that appellant could not be convicted unless *he* had intended to record a confidential communication. (See CALJIC No. 13.01.) Importantly, the instruction given in this matter strongly suggested that appellant could be convicted even if he reasonably believed the conversation was not confidential. This represented instructional error. Indeed, in *Smith*, our high court noted that "the recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or *with the knowledge to a substantial certainty* that his use of the equipment will result in the recordation of a confidential conversation." (*Smith*, *supra*, 70 Cal.2d at p. 134, italics added.)

A review of the trial record demonstrates there is a reasonable likelihood jurors applied the instruction in an impermissible manner. (See *People v. Houston*, *supra*, 54 Cal.4th at p. 1229.) Consequently, instructional error occurred. As we discuss below, however, this was not the only instructional error.

**B.      The jury was improperly instructed that a mistake of fact was not a legal defense for intent.**

Instructional error also occurred because the trial court informed the jury that a mistake of fact was "not a legal defense for intent." This was an incorrect statement of law.

Respondent asserts that this claim should be deemed forfeited. We disagree. We may review this instruction even though no objection was made below because appellant's substantial rights are impacted. (§ 1259.)

A defendant who commits an act "under an ignorance or mistake of fact," which disproves any criminal intent, is deemed incapable of committing a crime. (§ 26, subd. Three.) "As a general matter, however, a mistake of fact defense is not available unless the mistake disproves an element of the offense." (*In re Jennings* (2004) 34 Cal.4th 254, 277.) "Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design." (*Id.* at p. 278.)

**1.      Violation of section 632, subdivision (a) represents a general intent crime.**

The parties dispute whether or not section 632, subdivision (a) is a general intent crime. Appellant takes the position that it is a specific intent crime, while respondent contends it only requires a general criminal intent. We hold that section 632, subdivision (a) is a general intent crime.

"Intent can be either general or specific. 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or

20.

achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' [Citation.] General criminal intent thus requires no further mental state beyond willing commission of the act proscribed by law." (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215.) In other words, general intent exists "where the defendant intentionally does some act or fails to do some act; specific intent exists where, in doing the act or failing to do the act, the defendant intends a particular result. [Citation.]" (*People v. Williams* (2008) 161 Cal.App.4th 705, 710–711.)

Here, the crime in section 632, subdivision (a), occurs when a defendant intentionally records (or eavesdrops upon) a confidential communication. Thus, this statute requires general intent because the necessary criminal intent "requires no further mental state beyond willing commission of the act proscribed by law." (*People v. Sargent*, *supra*, 19 Cal.4th at p. 1215.) Consequently, we reject appellant's position that this is a crime requiring a specific intent.

### 2. A mistake of fact defense is available for general intent crimes.

A mistake of fact defense is available for general intent crimes. However, for general intent crimes, any mistake of fact must be both actual and reasonable. (*People v. Givan* (2015) 233 Cal.App.4th 335, 343.) The defendant's mistaken belief must relate to a set of circumstances which, if existent or true, would make the act charged an innocent one. (*People v. Richards* (2017) 18 Cal.App.5th 549, 563.)

CALCRIM No. 3406 provides a standard instruction regarding mistake of fact.[11] In relevant part, the Bench Notes to CALCRIM No. 3406 state, "If the defendant is

---

[11]    In its entirety, CALCRIM No. 3406 reads as follows:

21.

charged with a general intent crime, the trial court must instruct with the bracketed language requiring that defendant's belief be both actual and reasonable."

The trial court did not instruct the jury with CALCRIM No. 3406, but, instead, included in its "Special Instruction" the statement that a mistake of fact was "not a legal defense for intent." In its brief to this court, respondent notes that it is "unclear" from the trial record why the court provided this instruction. Regardless of why this instruction was provided to the jury, it represented an incorrect statement of law.

Based on our Supreme Court's prior pronouncements, it is apparent that an actual and reasonable mistake of fact could negate a defendant's criminal intent for conviction under section 632, subdivision (a). (See *Estate of Kramme*, *supra*, 20 Cal.3d at pp. 572–573, fn. 5; *Smith*, *supra*, 70 Cal.2d at p. 134.) A defendant's actual and reasonable mistake of fact could show that he or she did not intentionally or knowingly record (or eavesdrop upon) a confidential communication. Therefore, additional instructional error occurred in this matter. We turn to the issue of prejudice.

## C. The instructional errors were prejudicial.

When a jury instruction omits an element of a charged offense, we review the prejudicial effect under the standard established by *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Sakarias* (2000) 22 Cal.4th 596, 625.) We may affirm

---

"The defendant is not guilty of _____ *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

"If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ *<insert crime[s]>*.

"If you find that the defendant believed that _____ *<insert alleged mistaken facts>* [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for _____ *<insert crime[s]>*.

"If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ *<insert crime[s]>*, you must find (him/her) not guilty of (that crime/those crimes)."

22.

the jury's verdict despite the error if "it appears beyond a reasonable doubt that the error did not contribute to the particular verdict at issue." (*Ibid*.) If a reviewing court "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless." (*Neder v. United States* (1999) 527 U.S. 1, 19.)

Regarding instructional error for the defense of mistake of fact, our Supreme Court is currently deciding whether the standard for prejudice under *Chapman* should be applied, or the state standard under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).[12] (*People v. Hendrix* (Jan. 27, 2021, S265668) ___Cal.5th___ [2021 Cal.Lexis 722].)

This trial record contains some evidence from which rational jurors could conclude that appellant did not have the intent to record a confidential communication, or he did not reasonably believe he was recording a confidential communication. Likewise, it is possible that rational jurors could determine that appellant had held a reasonable mistaken belief that he could record this conversation.

Appellant went to the police department on the afternoon in question and he asked to speak with the chief. The chief agreed to speak with him, and appellant was escorted through a locked door. Appellant was not searched. The recorded conversation occurred in the chief's office. The door to the chief's office was left open and the lieutenant was present. Appellant discussed an alleged criminal matter that took place between appellant and D.R. Appellant expressed his frustration that the police were not arresting D.R.

Appellant did not testify at trial. However, when interviewed by the detective after this incident, appellant was asked if he had realized the chief's office was a

_____

**12** Under the state standard, we ask whether it is reasonably probable a result more favorable to the appealing party would have been reached in the absence of the error. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

"controlled area," and appellant said that he did not.  Appellant was asked if he thought it would have been better to inform the chief that he was recording.  Appellant responded that "you guys can record me at any time."  The detective informed appellant that he (appellant) must have known that the area near the chief's office was not public because of the "key encoded locked door."  Appellant disagreed because the area seemed "wide open."  Appellant said that he "never considered it."

We cannot declare that the instructional errors were harmless.  The jurors were never explicitly informed that appellant could not be found guilty unless he intended to record a confidential communication.  The jurors were also erroneously informed that a mistake of fact was not a defense to intent.  Together, these errors strongly suggested to the jury that appellant could be convicted even if he lacked criminal intent and/or he reasonably believed the conversation was not confidential.  Thus, we cannot declare beyond any reasonable doubt that the errors had no impact on the verdict.[13]  (See *Neder*, *supra*, 527 U.S. at p. 15; *Chapman*, *supra*, 386 U.S. at p. 24.)  Either when viewed individually, and especially when viewed cumulatively, these instructional errors caused clear prejudice regarding the standard necessary to establish criminal intent.  Accordingly, appellant's judgment must be reversed.

We will remand this matter for further proceedings.  We address below some of appellant's First Amendment arguments.  In light of our reversal, however, we do not reach appellant's remaining claims.

### III.    Section 632 Is Not Facially Unconstitutional.

Appellant raises numerous arguments to establish why his conviction must be reversed due to an alleged infringement of his First Amendment rights.  We need not, however, resolve those constitutional challenges.  " 'It is well established that "we do not

---

[13]    Because prejudice is present even under the more stringent federal standard, we need not determine whether error for the erroneous mistake of fact instruction should be resolved under the standard of *Chapman* or *Watson*.

reach constitutional questions unless absolutely required to do so to dispose of the matter before us." ' " (*People v. Duarte* (2000) 24 Cal.4th 603, 610, quoting *People v. Leonard* (1983) 34 Cal.3d 183, 187.)

We have already determined that appellant's judgment must be reversed due to prejudicial instructional errors. Accordingly, we decline to analyze whether appellant's judgment must be reversed based on the various alternative constitutional grounds which he has raised. We cannot predict how a properly instructed jury might resolve the disputed issues of fact, which could render appellant's constitutional issues moot. Under these circumstances, we decline to speculate or issue an advisory opinion. Because the issues are not of substantial and continuing public interest, we decline to consider them at this juncture.[14] (See *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 849–850 [appellate courts may review issues that are moot if the issues are " 'of substantial and continuing public interest' " but should otherwise avoid issuing advisory opinions]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 [a court ordinarily considers only an existing controversy, not a moot question or abstract proposition].)

Nevertheless, we will address whether section 632 is facially invalid. Appellant asserts that this statute is unconstitutional to the extent it may authorize a criminal prosecution if someone records a police communication in a public place.[15] We conclude that appellant's facial challenge is without merit.

---

[14]   We note that the United States Supreme Court has stated it is " 'frivolous' " to assert that the First Amendment confers a license on either a reporter or her news source " 'to violate valid criminal laws. Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news.' " (*Bartnicki v. Vopper* (2001) 532 U.S. 514, 532, fn. 19, quoting *Branzburg v. Hayes* (1972) 408 U.S. 665, 691.)

[15]   "The First Amendment protects the right to photograph and record matters of public interest. [Citations.] This includes the right to record law enforcement officers

25.

"In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases. [Citations.]" (*Washington State Grange v. Washington State Republican Party* (2008) 552 U.S. 442, 449–450 (*Washington*).) A party can only succeed in a facial challenge by establishing that the challenged law is unconstitutional "in all of its applications." (*Id.* at p. 449.) In addition, "a second type of facial challenge in the First Amendment context" is recognized "under which a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, ' "judged in relation to the statute's plainly legitimate sweep." ' [Citations.]" (*Washington*, *supra*, at pp. 449–450, fn. 6.)

Section 632 makes it a crime for a person to use an "electronic amplifying or recording device to eavesdrop upon or record" a "confidential communication." (§ 632, subd. (a).) To constitute a crime, the defendant must eavesdrop or record "intentionally and without the consent of all parties" to the confidential communication. (*Ibid.*) However, section 632 is inapplicable regarding a communication "made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (*Id.* at subd. (c).)[16]

---

engaged in the exercise of their official duties in public places. [Citations.]" (*Askins v. United States Dep't of Homeland Security* (9th Cir. 2018) 899 F.3d 1035, 1044.)

[16] Moreover, a person may record a confidential communication without violating section 632 when the recording is done "for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication" of certain enumerated crimes, such as extortion, kidnapping, bribery, and any felony involving violence against the person, including human trafficking and domestic violence. (§ 633.5.)

The California Supreme Court has declared that section 632 is a law "of general applicability." (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 239 (*Shulman*).) According to our high court, this statute applies "to all private investigative activity, whatever its purpose and whoever the investigator," and it imposes "no greater restrictions on the media than on anyone else." (*Shulman*, *supra*, at p. 239.) Section 632 serves "the undisputedly substantial public interest in allowing each person to maintain an area of physical and sensory privacy in which to live." (*Shulman*, at p. 239.) Thus, a member of the press has no constitutional privilege, merely by virtue of their status as members of the news media, "to eavesdrop in violation of section 632 or otherwise to intrude tortiously on private places, conversations or information." (*Ibid*.) "The conduct of journalism does not depend, as a general matter, on the use of secret devices to record private conversations." (*Ibid.*)

Section 632 is content neutral because it does not target any particular message, idea, or subject matter.[17] (See, e.g., *ACLU v. Alvarez* (7th Cir. 2012) 679 F.3d 583, 603 [finding an eavesdropping statute to be content neutral on its face].) Section 632 "prohibits unconsented-to recording or monitoring regardless of the content of the conversation or the purpose of the monitoring, and is intended to protect rights separate and distinct from the right to prevent the disclosure of improperly obtained private information." (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1389.)

---

[17]  In determining whether a regulation is content based or content neutral, a court must look to the purpose behind the regulation. (*Bartnicki v. Vopper*, *supra*, 532 U.S. at p. 526.) In general, a content-based law distinguishes favored speech from disfavored speech on the basis of the ideas or views expressed. (*Ibid.*) When the Government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded congressional enactments is reversed, and content-based regulations are presumed invalid. (*United States v. Playboy Entertainment Group, Inc.* (2000) 529 U.S. 803, 817.) The Government bears the burden to rebut that presumption. (*Ibid.*) Content-based restrictions on speech are subject to strict scrutiny and may only be upheld if they are "the least restrictive means available to further a compelling government interest." (*Berger v. City of Seattle* (9th Cir. 2009) 569 F.3d 1029, 1050 (en banc).)

At least one California appellate court has held that section 632 is not unconstitutionally vague.  (*People v. Wyrick* (1978) 77 Cal.App.3d 903, 908.)  A lower federal court has also concluded that section 632 "is not overbroad and does not run afoul of the First Amendment" because it provides "an objective reasonableness standard" regarding what constitutes a confidential communication.  (*Vera v. O'Keefe* (S.D.Cal. 2011) 791 F.Supp.2d 959, 967.)  We see no reason to question these holdings.

Based on the language contained in section 632, we reject appellant's facial challenge.  Nothing establishes that this statute is unconstitutional in all of its applications.  (See *Washington*, *supra*, 552 U.S. at p. 449.)  In addition, there is no showing that this statute is impermissibly overbroad for purposes of the First Amendment.  (See *Washington*, *supra*, at pp. 449–450, fn. 6.)  Consequently, we remand this matter for further proceedings.

## DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings consistent with this opinion.

LEVY, Acting P. J.

I CONCUR:


MEEHAN, J.

POOCHIGIAN, J., Concurring.

I concur in the majority's conclusion that the trial court's instructions in this case did not convey the requirement in *People v. Superior Court of Los Angeles County (Smith)* (1969) 70 Cal.2d 132[1] that *defendant* himself intended to record a confidential communication. Given the high standard for harmlessness applicable here, I reluctantly concur in the disposition of reversal as well. However, I write separately to emphasize that there was substantial evidence that defendant indeed had the required intent to record a confidential conversation.

The present case does not involve innocent recording or eavesdropping in a clearly public place. Here, the defendant sought to communicate directly with the police chief, secreted a recording device in the official premises of a law enforcement agency, and was escorted on a secure pathway through a restricted area to the personal office of the police chief. He surreptitiously videorecorded a private conversation with the apparent intent to publish its contents on social media to the extent defendant felt it useful to his interest – which he did the same day. It seems clear that the police chief considered the conversation to be private and confidential, and that the defendant knew that the police chief would view it as such. Such evidence strongly supports the conclusion that defendant intended to, and did, record a confidential communication.

With these observations, I concur in the judgment.

POOCHIGIAN, J.

---

[1] The facts of *People v. Superior Court of Los Angeles County (Smith)* are distinguishable from the present matter. In *Smith*, the recording at issue was essentially made inadvertently. And it was the defendant, who had caused the recording system to be installed, who sought to exclude the recordings.